676 So.2d 213 (1996)
Betty GAUTHREAUX, Individually and on Behalf of the Estate of Paul E. Gauthreaux, Donald Paul Gauthreaux, Laura Lynn Bellot, Penny Elizabeth Leblanc, Trudy Ann Braud, Colin James Gauthreaux, Jane Kathryn Gauthreaux, Kitty Judith Schwartz, Kelly Jude Gauthreaux, Allison Bankston and Jodie Elizabeth Gauthreaux,
v.
Boniface TROSCLAIR, M.D., and J. Barry Roberts, M.D.
No. 95 CA 0549.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
*214 George M. Papale, Gretna, LA, William E. LeBlanc, Donaldsonville, LA, for Appellees Betty Gauthreaux, et al.
Donald S. Zuber, Baton Rouge, LA, for Appellants Louisiana Patient Compensation Fund and Dr. Samson.
Before LeBLANC, WHIPPLE and FOGG, JJ.
LeBLANC, Judge.
This is a medical malpractice suit in which we determine the applicability of the 1991 amendment to the Medical Malpractice Act, La.R.S. 40:1299.41, et. seq.

FACTS
On May 15, 1986, after a brief hospital stay, Mr. Paul E. Gauthreaux died. A suit for personal injury, survivor benefits, and the wrongful death of Mr. Gauthreaux was brought by his wife and children (plaintiffs). Plaintiffs alleged medical malpractice by Dr. Boniface Trosclair and Dr. J. Barry Roberts, both non-qualified health care providers *215 under La.R.S. 40:1299.42.[1] Although the record does not include the subsequent amending and supplemental petition, it is uncontested that Dr. J.A. Herman Samson, a qualified health care provider, was named as an additional defendant before September, 1991.
The record indicates the plaintiffs accepted $900,000.00 in settlement with Dr. Roberts and $100,000.00 was paid to the plaintiffs in settlement by the insurer of Dr. Samson. Pursuant to notification of the settlement by Dr. Samson's insurer, the Louisiana Patient's Compensation Fund (the Fund)[2] entered the proceedings. Thereafter, the Fund filed a motion in limine, seeking a ruling on whether the Fund could contest the admitted negligence of Dr. Samson, whether the Fund could attempt to apportion fault between the Fund and Dr. Roberts for the purpose of determining damages due the plaintiffs, and whether the Fund could introduce evidence of the settlement between plaintiffs and Dr. Roberts for a credit for the Fund. In response, plaintiffs filed a motion for partial summary judgment, seeking a judgment determining the liability of Dr. Samson fixed as a matter of law and limiting the proceedings to the determination of the amount of plaintiffs' damages.
After a hearing on the motions, the trial court rendered a judgment fixing the liability of Dr. Samson as a matter of law and limiting the proceedings solely to the issue of quantum of plaintiffs' damages and denying the Fund's motion in limine. The Fund appeals, averring that the trial court erred in not allowing the Fund to assert the third party liability of Dr. Roberts.

LAW AND DISCUSSION
The Louisiana Medical Malpractice Act provides a scheme for medical malpractice claims against health care providers qualified in accordance with La.R.S. 40:1299:42.[3] The scheme limits the total amount recoverable for all malpractice claims for injuries or death to a patient to $500,000.00 and limits the liability of a qualified health care provider for malpractice claims of any one patient to $100,000.00. La.R.S. 40:1299.42B(1) and (2). If the amount due a claimant exceeds $100,000.00, the excess shall be paid from the Fund, up to the $500,000.00 amount recoverable on a malpractice claim. La.R.S. 40:1299.42B(3).
The procedure for determining the amount, if any, to be paid from the Fund is established in La.R.S. 40:1299.44. Where the insurer has agreed to settle its liability on a claim against its insured and the claimant is demanding an amount in excess of $100,000.00, the claimant files a petition seeking approval of the settlement and/or demanding payment from the Fund. A hearing is held, at which evidence may be introduced to determine whether or not the petition should be approved. If the amount of damages cannot be agreed upon, the court shall determine the amount of the claimant's damages. La.R.S. 40:1299.44C(5) provides, in pertinent part: "In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars...."
The interpretation and application of the liability provision of La.R.S. 40:1299.44C has been the subject of numerous decisions. The language of some decisions implied a foreclosing of all issues except the amount of claimant's damages. See Thomas v. Insurance Corp. of America, 93-1856, p. 4 (La. 2/28/94), 633 So.2d 136, 139; Koslowski v. Sanchez, 576 So.2d 470, 474 (La.1991) (overruled on other grounds by Russo v. Vasquez, *216 94-2407, p. 9 (La. 1/17/95), 648 So.2d 879, 884); Stuka v. Fleming, 561 So.2d 1371, 1374 (La.1990), cert. denied, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990); Doe v. Doe, 94-2284, 94-2285 p. 6 (La.App. 1st Cir. 6/23/95), 657 So.2d 628, 632, writ denied, 95-1810 (La. 10/27/95), 661 So.2d 1353. However, other decisions have hinted at a greater burden on claimants in cases where causation and damages were less clear. Cf. Jones v. St. Francis Cabrini Hospital, 94-2217, p. 7-8 (La. 4/10/95), 652 So.2d 1331, 1335-36; Cooper v. Sams, 628 So.2d 1181, 1186-87 (La. App. 3rd Cir.1993), writs denied, 94-0021, 94-0035 (La. 2/25/94), 632 So.2d 766, 767; Moolekamp v. Rubin, 531 So.2d 1124, 1127 (La.App. 4th Cir.1988).
Most recently in Pendleton v. Barrett, 95-2066, p. 11 (La. 5/31/96), 675 So.2d 720, the Supreme Court stated "payment by a qualified health care provider of $100,000 to a malpractice victim in settlement of a claim statutorily admits and establishes his liability, and the only remaining issue is the calculation or assessment of damages." (emphasis ours.) The Supreme Court, however, went on to hold this relieves the claimant of the "obligation to prove a causal connection between the admitted malpractice and claimant's original and primary harm ... [but] if [the] claimant is asserting claims for secondary damages, then he has the burden, notwithstanding admitted liability by virtue of the $100,000 settlement and La.R.S. 40:1299.44(C)(5), to prove that this secondary harm was caused by the medical negligence." Pendleton, 95-2066, p. 18-19; 675 So.2d at 730. If secondary harm is found and is within the scope of the duty owed to the claimant, then the plaintiff must prove a "causal connection between the defendant's breach of duty and [claimant's] secondary harm and consequent damage." Pendleton, 95-2066, p. 20, 675 So.2d at 731.
This interpretation recognizes limits to the automatic exposure of the Fund and the burden of the claimant to litigate causation and fault of his secondary harm. Therefore, the trial court was correct in rendering a judgment on plaintiffs' motion for partial summary judgment fixing the liability of Dr. Samson as a matter of law. As to plaintiffs' burden of proving their damages, they are relieved of the obligation to prove a causal connection between the admitted malpractice of Dr. Samson and their original and primary harm. That portion of the trial court's judgment is affirmed. As to any claim for secondary harm, plaintiffs are not relieved of their burden of proof. However, the record before us is incomplete as to plaintiffs' claimed damages; we, therefore, remand to the trial court for a determination of the "scope of the original harm ... and consequential damages caused by [Dr. Samson's] malpractice. Regarding any and all secondary harm, or harm not primary, the district court should perform a duty/risk analysis, Weber v. Charity Hospital of Louisiana, 475 So.2d 1047 (La.1985), and determine whether the secondary damages are the consequence of the type of risk of harm encompassed in [Dr. Samson's] duty of care." Pendleton, 95-2066, p. 20, 675 So.2d at 731.
By Acts 1991, No. 800, La.R.S. 40:1299.44 was amended to add:
D.(2)(b) In addition to such other powers and authority elsewhere expressly or impliedly conferred on the board by the Part, the board shall have the authority, to the extent not inconsistent with the provisions of this Part, to:
* * * * * *
(x) Defend the fund from all claims due wholly or in part to the negligence or liability of a non-covered health care provider or a product manufacturer, or both regardless or whether a covered health care provider has settled and paid its statutory maximum, or has been adjudged liable or negligent.
(xi) Defend the fund from all claims arising under R.S. 40:1299.44(D)(2)(b)(x), and obtain indemnity and reimbursement to the fund of all amounts for which the non-covered health care provider and/or product manufacturer may be held liable. The right of indemnity and reimbursement to the fund shall be limited to that amount that the fund may be cast in judgment.
The Fund asserts this amendment now allows the Fund the right to litigate the negligence or liability of non-qualified health *217 care providers and to obtain indemnity and reimbursement for all amounts for which non-qualified health care providers may be held liable. Acts 1991, No. 800 was effective September 6, 1991. The Fund argues that although enacted five years after Mr. Gauthreaux's death, La.R.S. 40:1299.44D(2)(b)(x) and (xi) are remedial and should be applied retroactively, thereby allowing the Fund to litigate the negligence or liability of Dr. Roberts.
In general, laws are deemed to be prospective in effect unless their language clearly indicates otherwise. La.R.S. 1:2 provides: "No Section of the Revised Statutes is retroactive unless it is expressly so stated." Exceptions to this general rule are laws which are interpretive, remedial or curative and procedural. Utley-James v. State, Div. Of Admin., 593 So.2d 1261, 1264-65 (La.App. 1st Cir.1991), writ denied, 597 So.2d 1036 (1992). This general rule is codified in La. C.C. art. 6, which provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
La.C.C. art. 6 requires a two-part inquiry. First, we must ascertain whether in the enactment the legislature expressed its intent regarding retroactive application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive. Prejean v. Dixie Lloyds Ins. Co., 94-2979, p. 7 (La. 5/22/95), 655 So.2d 303, 308, modified on rehearing on other grounds, 94-2979, p. 3 (La. 9/15/95), 660 So.2d 836, 837. La.C.C. art. 6 makes no reference to "remedial" legislation. Comment (d) of La.C.C. art. 6.
Acts 1991, No. 800 contains no express legislative intent regarding retroactive application; therefore, we must classify the enactment.
A "substantive law" which without express legislative intent cannot be applied retroactively, is one that creates an obligation and its acts are generally defined as those which create, confer, define or destroy rights, liabilities, causes of action or legal duties. Roadrunner Motor Rebuilders v. Ryan, 603 So.2d 214, 218 (La.App. 1st Cir.1992).
In Castillo v. Montelepre, Inc., 999 F.2d 931, 939-40 n. 6 (5th Cir.1993), the Fifth Circuit noted the 1991 amendment created in the Fund rights that are substantive in nature and effect and additional to those rights that were expressly and impliedly contained in the prior version of the statute. We also find the amendment substantive. The Fund is now expressly authorized, by the clear meaning of the words, to defend the Fund from claims due to non-qualified health care providers' negligence or liability and to seek indemnity and reimbursements. Accordingly, we find that Acts 1991, No. 800 clearly effected a change in existing rights and must be classified as substantive. The amendment may be applied prospectively only, as there is no express legislative intent for retroactive application.
Moreover, we are not persuaded by the additional language contained in Castillo, 999 F.2d at 939-40 n. 6, wherein the Fifth Circuit stated the Fund became statutorily liable for excess damages on the date of the court approved settlement. It is well settled that a cause of action arises when negligent or tortious conduct causes injury. See Abate v. Healthcare Intern., Inc., 560 So.2d 812, 819 (La.1990); Faucheaux v. Alton Ochsner Medical Foundation Hospital and Clinic, 470 So.2d 878, 878-79 (La.1985); Lott v. Haley, 370 So.2d 521, 524 (La.1979).[4] In the *218 instant case, plaintiffs' cause of action for damages arose on May 15, 1986, the date of Mr. Gauthreaux's death. This was prior to the enactment of the 1991 amendment to La.R.S. 40:1299.44. Under the law in effect on the day plaintiffs' cause of action arose, the Fund was not authorized to defend the fund from claims of negligence by a non-covered health care provider or to seek indemnity or reimbursement. The 1991 amendment is not controlling.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed, in part, and the matter is remanded for proceeding consistent with this opinion. Costs of this appeal to be paid by appellants.
AFFIRMED, IN PART, AND REMANDED.
NOTES
[1] Suit was also filed against several qualified health care providers who are not parties to this appeal.
[2] The Louisiana Patient's Compensation Fund is a designated fund of the state treasury for the payment of the amount due from either a judgment, settlement or arbitration award in excess of the limited $100,000.00 liability for malpractice claims of any one patient against a qualified health care provider, up to the $500,000.00 limit. La.R.S. 40:1299.41, 1299.42 and 1299.44.
[3] The statute provides that, in order to be qualified, a health care provider must file with the Fund's Oversight Board proof of financial responsibility and pay the assessed surcharge.
[4] The holding of Prejean v. Dixie Lloyds Ins. Co., 94-2979 (La. 5/22/95), 655 So.2d 303, upon rehearing, Prejean v. Dixie Lloyds Ins. Co., 94-2979, p. 3 (La. 9/15/95), 660 So.2d 836, 837 (on rehearing), wherein the Supreme Court identified the date of plaintiff's "right to sue" LIGA as different from the date when plaintiff could sue the tortfeasor's insurer is distinguishable. LIGA, a proper party defendant, occupies a different posture, and has different rights, than those statutorily granted to the Fund. As stated in Thomas v. Insurance Corp., 93-1856, p. 3, 633 So.2d at 139, "[t]he Medical Malpractice Act contemplates that only the health care provider is to be the actual party defendant. Rather than being either a negligent party or the equivalent of an Article 2315 defendant, the Fund is considered simply a third party with an interest in the proceedings...."