899 So.2d 15 (2005)
Jerry BICKHAM, et al
v.
INPHYNET, INC., et al.
No. 2003 CA 1897.
Court of Appeal of Louisiana, First Circuit.
September 24, 2004.
Marie Riccio Wisner, New Orleans, Counsel for Plaintiffs/Appellees Ella Bickham, et al.
Ronald A. Seale, Daniel A. Reed, Donald S. Zuber, Baton Rouge, Counsel for Defendant/Appellant Washington Parish Hospital Services District No. 1 D/B/A Riverside Medical Center.
David A. Woolridge, Jr., Larry M. Roedel, Baton Rouge, Counsel for Intervenor/Appellee Louisiana Patient's Compensation Fund Oversight Board.
C. William Bradley, New Orleans, Counsel for Defendants Inphynet, Inc., et al.
Before: CARTER, FOIL, PARRO, FITZSIMMONS, KUHN, GUIDRY, PETTIGREW, DOWNING, GAIDRY, McDONALD, and McCLENDON, JJ.
FITZSIMMONS, J.
Defendant/appellant, Washington Parish Hospital Service District No. 1 d/b/a/ Riverside Medical Center (Riverside), was denied a dilatory exception of prematurity by the trial court. We affirm.
Jerry Bickham filed a medical malpractice claim for damages allegedly incurred *16 in the emergency room of Riverside while under the professional care of Bascom Yacoub, M.D. In addition to the claim for medical malpractice, Mr. Bickham also filed a lawsuit in the Twenty-Second Judicial District Court against Riverside and several other party defendants in which he alleged, among other causes, "negligent credentialing" and "negligent supervision" by the institution(s). Pursuant to his first amended petition for damages, Mr. Bickham asserted the following claims:
The Second Cause of Action is for negligent monitoring, supervision/direction of the Emergency Room physicians at Riverside in 1997, by LEMC and InPhyNet (through their employee/agent Dr. Bruce Kerry) and Riverside....
...
The third cause of Action is for the negligent credentialing (of Dr. Yacoub and the Emergency room physicians at Riverside), by LEMC, InPhyNet, and Riverside, through their employees who were charged with the responsibility of screening and verifying the credentials of the physicians accorded staff privileges at Riverside's emergency room.... (emphasis supplied.)
Riverside filed an exception of prematurity on the basis that all the claims by Mr. Bickham fell within the parameters of the Louisiana Medical Malpractice Act (MMA), in accordance with La. R.S. 40:1299.42 and 40:1299.47. The trial court denied the exception of prematurity.[1] In reasons for judgment in support of its denial of the exception of prematurity, the trial court stated that "the negligent supervision claim and the negligent credentialling (sic) claim are outside the scope of the Louisiana Medical Malpractice Act, as written and interpreted at the time that the instant suit was filed." Riverside's subsequent application for review pursuant to supervisory writs of the court's judgment was converted by this court to a motion for appeal.
It is initially observed that the Louisiana Supreme Court has, on numerous occasions, strictly construed any ambiguities in the MMA against coverage because the MMA curtails the liability of health care providers in derogation of the general rights of tort victims. Hutchinson v. Patel, 93-2156 (La.5/23/94), 637 So.2d 415. The case currently before this court involves an action that arose prior to the 2001 amendment to La. R.S. 1299.41 A(8), which added to the definition of medical malpractice all legal responsibility of a health care provider arising from "acts or omissions in the training or supervision of health care providers ...."[2] The amendment to La. R.S. 1299.41 A(8) is substantive in nature and effect, supplementing those rights that were contained in the prior version of the statute. Gauthreaux v. Trosclair, 95-0549, pp. 6-7 (La.App. 1 Cir. 6/28/96), 676 So.2d 213, 217. There is no express legislative intent to apply the expanded definition of medical malpractice retroactively; therefore, La. R.S. 1299.41 A(8) applies prospectively only. Hedgepeth v. Guerin, 96-1044 (La.App. 1 Cir. 3/27/97), 691 So.2d 1355, 1364, writ denied, 97-1377 (La.9/26/97), 701 So.2d 983; Gauthreaux v. Trosclair, 95-0549, pp. 6-7, 676 So.2d at 217.
Williams v. State, XXXX-XXXX (La.App. 1 Cir. 6/22/01), 801 So.2d 463, writ denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1146, *17 similarly addressed a claim premised on negligent hiring, albeit the purported liability involved state services, which are specifically regulated by the Malpractice Liability for State Services Act.[3] In Williams, the provisions of La. R.S. 40:1299.39 A(6) limited "health care" to an act or treatment "during the medical care, treatment or confinement of the patient." Williams, XXXX-XXXX, p. 2, 801 So.2d at 464. This court held that a hospital's alleged negligent hiring or employment of a surgeon by the hospital did not constitute "health care" by the hospital, such that it would fall within the definition of medical malpractice. Williams, XXXX-XXXX, p. 3, 801 So.2d at 464.
The analysis employed in Williams applies to the instant case. "Health care" has consistently been defined in the MMA as "any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." La. R.S. 40:1299.41(8). At the time that Mr. Bickham's claim arose in 1997, "malpractice" was defined in La. R.S. 40:1299.41 A(8) of the MMA as follows:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
Based on the outlined facts and legal axioms, the allegations of negligent monitoring, supervision/direction and credentialing fail to meet the applicable statutory definition of medical malpractice at the time the causes of action arose. Thus, the trial court's denial of the exception of prematurity is affirmed. All costs associated with this appeal are assessed to Washington Parish Hospital Service District No. 1 d/b/a Riverside Medical Center.
AFFIRMED.
PARRO, CARTER, McDONALD and FOIL, JJ., dissents for reasons assigned by GUIDRY, J.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, J., dissenting.
I disagree with the majority opinion finding that the plaintiff's claims for negligent monitoring, supervision/direction, and credentialing fail to meet the statutory definition of medical malpractice and therefore do not fall within the Medical Malpractice Act, La. R.S. 40:1299.41-1299.48.
With regard to Riverside's policies for monitoring and supervision/direction of emergency room physicians, I find that such allegations involved and impacted the provision of health care as that term is defined, and as such, fall within the definition of malpractice. I agree with the majority that the statutory amendment adding such claims to the definition of malpractice is not applicable to the instant case. However, even without considering that amendment, these allegations clearly fall within the applicable statutory definition of malpractice. These allegations involve Riverside's failure to monitor and supervise its emergency room physicians to ensure that they were capable of performing *18 the responsibilities (i.e., patient care, reading radiology reports) to which they were given. These acts of wrongdoing, by nature, are inclusive not only of Riverside's initial failure, which pre-dated Mr. Bickham's injury, but also its continued failure to monitor and supervise Dr. Yacoub during and through the date of Mr. Bickham's treatment. As such, Riverside's actions directly involved and impacted the provision of health care afforded Mr. Bickham "during [his] medical care, treatment or confinement," thereby invoking the provisions of the Medical Malpractice Act. See La. R.S. 40:1299.41 A(9); see also Armand v. State, Department of Health and Human Resources, 97-2958, p. 10 (La.App. 1st Cir.2/23/99), 729 So.2d 1085, 1090, writ denied, 99-0842 (La.5/14/99), 741 So.2d 661; Williams v. State, 00-0365, pp. 1-2 (La.App. 1st Cir.6/22/01), 801 So.2d 463, 464-465 (Guidry, J., dissenting), writ denied, 01-1954 (La.10/26/01), 799 So.2d 1146.
With regard to Mr. Bickham's claim of negligent credentialing, in addition to the statutory definition of malpractice outlined in the majority opinion, the supreme court has utilized six additional factors to determine whether certain conduct by a qualified health care provider constitutes malpractice under the Medical Malpractice Act. See Coleman v. Deno, 01-1517, pp. 17-18 (La.1/25/02), 813 So.2d 303, 315-316. The most important factors to this case are:[1]
1. Whether the particular wrong is treatment related or caused by a dereliction of professional skill,
2. Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
3. Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform, and
4. Whether the injury would have occurred if the patient had not sought treatment.
Coleman, 01-1517 at pp. 17-18, 813 So.2d at 315-316.
In order for Mr. Bickham to prove the tort of negligent credentialing, he must first establish that a negligent act of Dr. Yacoub proximately caused his injury before he can proceed against Riverside. As a result, it is inappropriate to look only to the credentialing conduct alleged in the complaint to determine whether it sounds in malpractice or in ordinary negligence. The credentialing process alleged must have resulted in a definable act of medical malpractice that caused damage to Mr. Bickham or Mr. Bickham would be without a basis to bring the suit against Riverside. See Armand, 97-2958 at p. 10, 729 So.2d at 1090; Williams, 00-0365 at pp. 1-2, 801 So.2d at 464-465 (Guidry, J., dissenting); Winona Memorial Hospital v. Kuester, 737 N.E.2d 824, 828 (Ind.App.10/24/00). Therefore, when examining these two acts together, it is clear that the credentialing conduct directly impacts, involves, and is related to the treatment received by Mr. Bickham, and as such, is related to the provision of health care.
Additionally, it is clear from examining the allegations in Mr. Bickham's petition that expert testimony will be necessary to prove the negligent credentialing claim. Mr. Bickham asserts on appeal not only that Riverside failed to have a credentialing procedure or policy in place, but that *19 when it did investigate the credentials of Dr. Yacoub, it did so negligently. Issues such as the standard of care owed by Riverside in credentialing its physicians and whether Dr. Yacoub possessed the necessary training, expertise, or skill necessarily would require expert medical testimony. See Winona, 737 N.E.2d at 828; see also Gladney v. Sneed, 32,107, pp. 4-5 (La.App. 2nd Cir.8/18/99), 742 So.2d 642, 646-647, writ denied, 99-2930 (La.1/14/00), 753 So.2d 215; Scott v. Dauterive Hospital Corp., 02-1364, p. 21 (La.App. 3rd Cir.4/23/03), 851 So.2d 1152, 1166-1167, writ denied, 03-2005 (La.10/31/03), 857 So.2d 487; Fusilier v. Dauterive, 99-692, p. 16 (La.App. 3rd Cir.12/22/99), 759 So.2d 821, 831, rev'd on other grounds, 00-0151 (La.7/14/00), 764 So.2d 74.
Further, according to the Hospital Licensing Laws, La. R.S. 40:2114(C) and (E),[2] Riverside was statutorily required to credential its physicians. Therefore, because Riverside was required to establish criteria for granting privileges or credentialing its physicians in order to receive/maintain its license, its failure to do so or its negligence in doing so can be construed as coming within the scope of activities which a hospital is licensed to perform.
Finally, as stated previously, it is unquestionable any injury suffered by Mr. Bickham as a result of Riverside's negligent credentialing would not have occurred had he not sought and received treatment from Dr. Yacoub in Riverside's emergency room. It was not until he came in contact with Dr. Yacoub and received treatment that any actionable damage was suffered as a result of the credentialing policy or administrative failures of Riverside.
Therefore, after applying the Coleman factors to the instant case, and in accordance with my views as expressed in Armand and Williams, it is evident that Mr. Bickham's claims of negligent monitoring, supervision/direction, and credentialing fall within the statutory definition of malpractice. As such, the provisions of La. R.S. 40:1299.41 apply, and Mr. Bickham's action related to these claims is premature.
For these reasons, I respectfully dissent.
NOTES
[1] The trial court initially stayed the proceedings until the rendition of an opinion by the medical review panel; however, in response to a motion for new trial filed on behalf of the Louisiana Patient's Compensation Board, as intervenor, the court ultimately rendered a judgment denying the dilatory exception.
[2] Acts 2001, No. 108, § 1.
[3] Medical malpractice claims involving state-owned or state-operated hospitals in Louisiana are subject to the provisions of La. R.S. 40:1299.39 and 40:1299.39.1.
[1] The remaining two factors really have no bearing on the instant case. Mr. Bickham's allegations involve negligent credentialing and do not allege any intentional tort. Additionally, the acts or omissions asserted by Mr. Bickham do not involve the assessment of a patient's condition.
[2] La. R.S. 40:2114 provides in part:

C. No individual shall be automatically entitled to membership on the medical and dental staff or to the exercise of any clinical privilege solely on the basis of his license to practice in any state, his membership in any professional organization, his certification by any clinical examining board, or his clinical privileges or staff membership at another hospital without meeting the reasonable criteria for membership established by the governing body of the respective hospital.
* * *
E. A hospital shall establish rules, regulations, and procedures setting forth the nature, extent, and type of staff membership and clinical privileges, as well as the limitations placed by the hospital on said staff membership and clinical privileges for all health care providers practicing therein.