899 So.2d 41 (2005)
Shirley Autin EUSEA
v.
Roger J. BLANCHARD, Jr., M.D., et al.
No. 2004 CA 1855.
Court of Appeal of Louisiana, First Circuit.
February 11, 2005.
Rehearing Denied March 23, 2005.
*42 A. Remy Fransen, Jr., P. Chris Christofferson, Fransen & Hardin, Eric M. Daigle, New Orleans, for Plaintiff-Appellee Shirley Autin Eusea.
C. Wm. Bradley, Jr., Nicole M. Duarte, Lemle & Kelleher, L.L.P., New Orleans, Daniel A. Reed, Seale, Smith, Zuber & Barnette, Baton Rouge, for Defendants-Appellants Broadlawns Medical Center and St. Paul Fire & Marine Ins. Co.
David A. Woolridge, Jr., Larry M. Roedel, Roedel, Parsons, Koch, Blache, Balhoff & McCollister, A L.C., Baton Rouge, for Intervenor-Appellee The Louisiana Patient's Compensation Fund Oversight Board.
Before: PARRO, KUHN, and PETTIGREW, JJ.
PARRO, J.
In this medical malpractice case, Broadlawns Medical Center of Des Moines, Iowa (Broadlawns), and its excess liability insurer, St. Paul Fire & Marine Insurance Company (St. Paul), appeal a judgment overruling their dilatory exception raising the objection of prematurity and holding that the lawsuit filed by Shirley Autin Eusea was not premature for failure to present her negligence claims against Broadlawns to a medical review panel before including them in the lawsuit. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
This is the third time this medical malpractice litigation has generated an appeal to this court. Dr. Roger J. Blanchard, Jr. was in a three-year family practice residency with Broadlawns, a portion of which was spent working in a "preceptorship" of his choice at the Ochsner Family Practice Clinic in Mathews, Louisiana. Ms. Eusea, a patient whom he treated there in 1995, filed a malpractice claim against him and others, claiming that as a result of Dr. Blanchard's failure to correctly diagnose and treat her strep infection, the lower portion of all four of her limbs had to be amputated due to septicemia and gangrene that set in.
The first case this court reviewed was a declaratory judgment action filed by St. Paul in the Nineteenth Judicial District Court. The issues in that action were: (1) whether Dr. Blanchard was a qualified health care provider under the Louisiana Medical Malpractice Act (the Act);[1] (2) *43 which of two insurers would be responsible for coverage for the malpractice claim asserted against him by Ms. Eusea; and (3) whether the insurer could avail itself of the $100,000 limitation on the doctor's individual liability limit under the Act. This court affirmed the trial court judgment in part, agreeing that Dr. Blanchard had qualified under the Act and that St. Paul was responsible for coverage, and amended the judgment in part, holding on rehearing that St. Paul was not entitled to the benefit of Dr. Blanchard's individual liability limit of $100,000, but was contractually obligated to provide coverage to Broadlawns and Dr. Blanchard to the full extent of its $30,000,000 policy. See St. Paul Fire & Marine Ins. Co. v. Eusea, 99-2117 (La. App. 1st Cir.9/22/00), 775 So.2d 32 (on rehearing), writs denied, 01-0472 and 01-0536 (La.4/27/01), 791 So.2d 116 and 117 (Eusea I).
In the second appeal to this court, after Ms. Eusea had named Broadlawns as a defendant in her malpractice suit, Broadlawns raised the issue of whether its contacts with this state were sufficient for a Louisiana court to have in personam jurisdiction over it. The Seventeenth Judicial District Court had sustained Broadlawns' exception raising the objection of lack of personal jurisdiction, and Ms. Eusea appealed. Finding that Broadlawns was subject to Louisiana's jurisdiction, we reversed the judgment and remanded the case. See Eusea v. Blanchard, 01-2229 (La.App. 1st Cir.12/20/02), 836 So.2d 333, writ denied, 03-0210 (La.3/28/03), 840 So.2d 575 (Eusea II).
The issue in this appeal is whether Ms. Eusea's negligence claims against Broadlawns are premature, because she did not present them to a medical review panel before making those claims in this lawsuit. In 1999, Ms. Eusea presented her claims against some of the other health care providers to a medical review panel, but Dr. Blanchard waived his right to a medical review panel. Eventually Ms. Eusea amended her petition to allege, not just vicarious liability against Broadlawns for the negligence of its employee, Dr. Blanchard, but also to allege the hospital's negligence in providing education to him and/or guidelines for supervising him during his preceptorship in Louisiana. Broadlawns and St. Paul filed a dilatory exception raising the objection of prematurity for Ms. Eusea's failure to bring the negligence claims to a medical review panel. After two hearings, the court overruled the exception, and this appeal followed. A motion to expedite the appeal was granted, due to Ms. Eusea's physical condition and the lapse of almost ten years since the alleged act of malpractice occurred.

DISCUSSION
Louisiana Code of Civil Procedure article 926(A)(1) provides for the dilatory exception raising the objection of pre-maturity. Such an objection is intended to retard the progress of the action rather than to defeat it. LSA-C.C.P. arts. 923 and 926. A suit is premature if it is brought before the right to enforce the claim sued on has accrued. LSA-C.C.P. art. 423. Prematurity is determined by the facts existing at the time suit is filed. Houghton v. Our Lady of the Lake Hosp. Inc., 03-0135 (La.App. 1st Cir. 7/16/03), 859 So.2d 103, 106. The objection of prematurity raises the issue of whether the judicial cause of action has yet come into existence because some prerequisite condition has not been fulfilled. Bridges v. Smith, 01-2166 (La.App. 1st Cir.9/27/02), 832 So.2d 307, 310, writ denied, 02-2951 (La.2/14/03), 836 So.2d 121. The objection contemplates that the action was brought prior to some procedure or assigned time, and is usually used in cases where the applicable law or contract has provided a *44 procedure for one aggrieved of a decision to seek relief before resorting to judicial action. Plaisance v. Davis, 03-0767 (La. App. 1st Cir.11/7/03), 868 So.2d 711, 716, writ denied, 03-3362 (La.2/13/04), 867 So.2d 699.
The district court reached its decision in this case on the basis that Broadlawns was not a "qualified" health care provider under the Act, because it did not file the proof of financial responsibility that would entitle it to that status.[2] Moreover, the court concluded Broadlawns could not "piggyback" onto Dr. Blanchard's status, because the policy under which he obtained qualified status provided coverage only for his services at another hospital and not for his services at Ochsner under the "preceptorship." Therefore, Dr. Blanchard's proof of financial responsibility was insufficient to allow Broadlawns to claim "concurrent" qualified status with him.[3] The protections of the Act, including the requirement that claims must be presented to a medical review panel before suit is filed, are available only for qualified health care providers. See LSA-R.S. 40:1299.41(D). Based on its finding that Broadlawns was not qualified under the Act, the court determined that the hospital was not entitled to a medical review panel and the suit was not premature. Having so found, the court pretermitted other issues raised by Ms. Eusea, including whether the claims against Broadlawns constituted malpractice and whether certain amendments to the Act that occurred after 1995 could be retroactively applied to her claims. Broadlawns asserts that the court erred in overruling the exception raising the objection of prematurity on the basis of its holding that Dr. Blanchard, who was Broadlawns' only employee providing health care in Louisiana at the time, is only "partially qualified" under the Act and that Broadlawns is not concurrently qualified under LSA-R.S. 40:1299.45(A)(2).
Although the district court focused on the status of Broadlawns as qualified or unqualified under the Act, that is not the only deciding factor on the exception raising the objection of prematurity. Even if we were to reverse the district court and find that Broadlawns is a qualified health care provider, we would still have to address whether other criteria of the Act were met, including whether the negligence claims against Broadlawns fit the definition of malpractice. In order to invoke the protection of a medical review panel, the claim must be one of malpractice against a qualified health care provider. LSA-R.S. 40:1299.47(A)(1) and (B)(1)(a)(i). On the malpractice issue, we are bound by a previous en banc decision of our court rendered several months ago, Bickham v. Inphynet, Inc., 03-1897 (La. App. 1st Cir.9/24/04), 899 So.2d 15, 2004 WL 3155549 (en banc), writ denied, 04-2638 (La.12/17/04), 888 So.2d 876.[4] In that *45 medical malpractice case, the plaintiff alleged "negligent credentialing," "negligent monitoring," and "negligent supervision" by the hospital where he was treated. The hospital filed an exception raising the objection of prematurity, because those claims had not first been presented to a medical review panel. The district court denied the exception, stating that the negligent supervision and credentialing claims did not fall within the scope of the Act, as written and interpreted when the lawsuit was filed. This court converted the hospital's application for supervisory writs to a motion for appeal and heard the appeal en banc.
The court noted that in 1997, when Mr. Bickham's claim arose, "malpractice" was defined in LSA-R.S. 40:1299.41(A)(8) of the Act as follows:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
The definition of medical malpractice in the statute was amended by 2001 La. Acts, No. 108, § 1. In reaching its conclusion in Bickham, this court stated:
The case currently before this court involves an action that arose prior to the 2001 amendment to La. R.S. [40:]1299.41A(8), which added to the definition of medical malpractice all legal responsibility of a health care provider arising from "acts or omissions in the training or supervision of health care providers ...." The amendment to La. R.S. [40:]1299.41A(8) is substantive in nature and effect, supplementing those rights that were contained in the prior version of the statute. There is no express legislative intent to apply the expanded definition of medical malpractice retroactively; therefore, La. R.S. [40:]1299.41A(8) applies prospectively only.
* * *
Based on the outlined facts and legal axioms, the allegations of negligent monitoring, supervision/direction and credentialing fail to meet the applicable statutory definition of medical malpractice at the time the causes of action arose. Thus, the trial court's denial of the exception of prematurity is affirmed. (Footnotes and citations omitted).
Bickham, 899 So.2d at 16, 17.
The case before us is indistinguishable from the Bickham case. Ms. Eusea's claim occurred as a result of treatment she received in 1995. At that time, the definition of medical malpractice did not include negligent supervision, negligent direction, or negligent training of a treating physician whose alleged malpractice caused injury to the patient. This court determined in Bickham that the 2001 amendment to the definition of malpractice was a substantive change in the law, and therefore the new definition could not be applied to an earlier cause of action. Because Ms. Eusea's claim in this case against Broadlawns does not involve malpractice, as that was defined *46 when her claim arose, she had no obligation to present the claim to a medical review panel before making the allegation part of her lawsuit. Therefore, her claims against Broadlawns were not premature, and the district court did not err in overruling the exception.

CONCLUSION
The judgment of the district court, which overruled the dilatory exception of prematurity filed by Broadlawns and St. Paul, is affirmed. All costs of this appeal are assessed against Broadlawns and St. Paul.
AFFIRMED.
NOTES
[1] Neither Dr. Blanchard nor Broadlawns were parties in that action.
[2] LSA-R.S. 40:1299.42(A)(1) states that to be qualified, a health care provider must file proof of financial responsibility with the Patient's Compensation Fund Oversight Board (the Board). Sub-paragraph E requires self-insured entities, such as Broadlawns, to deposit $125,000 or equivalent security with the Board.
[3] LSA-R.S. 40:1299.45(A)(2) currently states, in pertinent part:

When, and during the period that each... employee of a corporation ... who is eligible for qualification as a health care provider under this Part, and who is providing health care on behalf of such corporation,... is qualified as a health care provider under the provisions of R.S. 40:1299.42(A), such corporation ... shall, without the payment of an additional surcharge, be deemed concurrently qualified and enrolled as a health care provider under this Part.
[4] Although originally designated as not for publication, the court has recently agreed to designate the Bickham case for publication. The case is currently listed on the table of cases on page 1153 of Volume 883 of the Southern 2nd Reporter; the reported case has not yet been published.