JAMES F. McKAY III, Judge.
hln this medical malpractice case, the defendant, Louisiana Patient’s Compensation Fund Oversight Board, appeals the trial court’s judgment finding it liable for acts of malpractice committed by Dr. Henry M. Evans, Jr. The plaintiffs, John Lee Talbert Jr. and Cynthia Talbert, answered the appeal questioning the trial court’s allocation of fault and quantum of damages. For the following reasons, we affirm as amended.
FACTS AND PROCEDURAL HISTORY
On the morning of December 21, 1999, John Lee Talbert, Sr., a seventy-two (72) year old male accompanied by his adult daughter presented as a new patient at the Louisiana Avenue Medical Center, Inc. (LAMC) with complaints of recurring headaches for three days. During his visit to LAMC, Mr. Talbert was seen and exclusively treated by Miriam Wilbon. Ms. Wilbon was a physician’s assistant to Dr. Henry Evans, Jr., the owner and operator of LAMC.
Mr. Talbert informed Ms. Wilbon that he had been experiencing headaches that lasted for approximately five minutes for several days. A number of | ^diagnostic tests were performed on Mr. Talbert and an EKG was ordered. However, Ms. Wil-bon failed to chart the results of the tests and the EKG was not performed because the EKG machine had run out of fracing paper. From her examination of Mr. Tal-bert, Ms. Wilbon concluded that he suffered from migraine headaches. She then gave him a 2.5 mg sample of Zomig that she retrieved from Dr. Evans’s unlocked medication sample closet. She also issued a prescription to Mr. Talbert for more Zomig on a blank prescription order sheet that Dr. Evans had pre-signed. Ms. Wil-bon advised Mr. Talbert to take the medication every six hours to relieve his head pain. Before he was discharged from LAMC, Mr. Talbert’s daughter advised Ms. Wilbon that her father was not able to remember the instructions he had been given regarding the medication because of a head trauma that had occurred in the past. However, no further examination was conducted and Mr. Talbert was discharged.
Mr. Talbert and his daughter returned home where he took the Zomig as he had *676 been instructed. Within thirty (30) minutes of taking the Zomig, Mr. Talbert began to experience nausea, weakness and slurred speech. Mr. Talbert was transported by ambulance to Memorial Medical Center. It was discovered that he had had a reaction to Codeine. He was then given ten (10) mg of Compazine. After his headache decreased, Mr. Talbert was discharged later that day with a new prescription for Fiorcet.
Mr. Talbert again returned to his home. However, his condition worsened to the point where he could no longer sit up and his speech was impaired. He also | (¡complained of abdominal pain and shortness of breath. He was then taken to Charity Hospital. When he arrived at Charity, his vital signs revealed a blood pressure of 100/P, pulse 186, and a respiratory rate of 44. An EKG was run and it was found to be abnormal. It showed a pattern of sinus tachycardia, right bundle branch block, anterior infarct of undetermined age, and possible infarct of undetermined age. Mr. Talbert died at 3:10 a.m. the following morning. The cause of death was acute myocardial infarct due to ather-osclerotic coronary artery disease.
On November 6, 2000, Mr. Talbert’s adult children, Cynthia Talbert and John Lee Talbert, Jr., filed a medical malpractice complaint against Dr. Evans with the Division of Administration. A medical review panel was convened and it found that Dr. Evans failed to meet the applicable standard of care. In its opinion, the medical review panel concluded: “Dr. Evans was responsible for the care rendered by the Physician Assistant and authorizing the distribution of the medication administered to the patient. The administration of Zomig increased the risk of vasospasm in a patient at risk for coronary artery disease.”
On August 1, 2007 the Talberts filed a post-panel petition for damages against Dr. Evans and LAMC. On April 1, 2008, the Patient’s Compensation Fund (PCF) intervened and subsequently filed a motion for summary judgment on the grounds that the PCF does not cover the acts of Ms. Wilbon. After hearing oral arguments on the motion, the trial court concluded that Ms. Wilbon was not qualified under the PCF and granted the PCF’s motion for summary judgment.
|4The case proceeded to trial on April 7, 2010. The trial court found for the plaintiffs and against the defendants awarding wrongful death damages of $175,000.00 to John Lee Talbert, Jr. and $200,000.00 to Cynthia Talbert. In accompanying reasons for judgment, the court stated that Dr. Evans had breached the standard of care by failing to properly supervise his employee, which breach caused Mr. Tal-bert’s death. All parties filed post-trial motions seeking to amend the judgment. The trial court granted the plaintiffs’ JNOV and/or new trial and amended its judgment to award the plaintiffs an additional $75,000.00 for survival damages and $1,120.00 for past medical expenses incurred by their father. The trial court also granted in part the defendants’ motion for new trial and reduced the damage award to comply with the limitations required by the Louisiana Medical Malpractice Act. The trial court further amended its original judgment to assign comparative fault among the defendants: Dr. Evans 30%, LAMC 30%, and Miriam Wilbon 40%. However, the trial court emphasized that Dr. Evans was legally responsible for all fault that caused the wrongful death of Mr. Talbert. The defendants have appealed this judgment and the plaintiffs have answered the appeal.
DISCUSSION
On appeal, the defendants raise the following assignments of error: 1) the trial court failed to clearly rule that the Louisi *677 ana Patient’s Compensation Fund Oversight Board has no liability for any portion of the judgment rendered in these proceedings; and 2) the trial court failed to rule that none of the acts for which | ^defendants were found to be liable constitute acts of “medical malpractice” under applicable law. In their answer to the appeal, the plaintiffs raise the following assignments of error: 1) the trial court improperly apportioned fault among Dr. Evans, Ms. Wilbon and LAMC in its May 3, 2011 judgment when it failed to find Dr. Evans 100% at fault; 2) the trial court’s quantum award to John Lee Talbert, Jr. and Cynthia Talbert for their wrongful death damages in its May 3, 2011 judgment was inappropriate and plaintiffs/ap-pellees suggest that an award of $250,000.00 to John Lee Talbert, Jr. and $250,000.00 to Cynthia Talbert is appropriate; and 3) the trial court’s quantum award for Mr. Talbert’s survival damages was inappropriate and plaintiffs/appellees suggest that an award of $250,000.00 is appropriate.
At the time of the decedent’s death in 1999, the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41, et seq., defined medical malpractice as follows:
“Malpractice” means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
La. R.S. 40:1299.41(A)(13).
In 2001, the Louisiana Legislature amended the definition of malpractice in the Act to include “training or supervision of health care providers.” Act No. 108 of 2001. The statute then read:
“Malpractice” means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render 1 (¡services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
La. R.S. 40:1299.41(A)(13).
The PCF argues that it is not liable for Dr. Evans’s supervision of Ms. Wilbon because that was not covered under the version of the Act that was in place at the time of the alleged malpractice. The PCF relies on three cases from the First Circuit, Bickham v. Inphynet, Inc., 2003-1897 (La.App 1 Cir. 9/24/04), 899 So.2d 15, Williams v. State, 2000-0365 (La.App. 1 Cir. 6/22/01), 801 So.2d 463, and Eusea v. Blanchard, 2004-1855 (La.App. 1 Cir. 2/11/05), 899 So.2d 41, to suggest that claims of negligent supervision do not constitute medical malpractice because the definition of medical malpractice did not specifically include the word “supervision” at the time of Mr. Talbert’s death. However, in Coleman v. Deno, 2001-1517 (La.1/25/02), 813 So.2d 303, the Louisiana Supreme Court noted that the medical malpractice statute could not possibly exhaust every potential scenario of malpractice as defined by the Act; the Court *678 suggested six factors to assist the trier of fact in evaluating whether a claim of malpractice falls within the limited statutory definition. Those factors are:
“[1] whether the particular wrong is ‘treatment related’ or caused by a dereliction of professional skill,
whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, and
whether the pertinent act or omission involved assessment of the patient’s condition.”
[[Image here]]
“[4] whether an incident occurred in the context of a physician — patient relationship, or was within the scope of activities which a hospital is licensed to perform,
whether the injury would have occurred if the patient had not sought treatment, and
|7[6] whether the tort alleged was intentional.”
Id. at 315-16.
In the instant case, Ms. Wilbon failed to perform an adequate assessment of Mr. Talbert; this included not performing an EKG because there was no paper for the machine. Mr. Talbert was also given a medication, Zomig, that could have an adverse effect on him because of his coronary artery disease. This all took place at the LAMC where Dr. Evans was the sole supervising physician of Ms. Wilbon. There were also actions on the part of Dr. Evans that were clearly his own which failed to meet the applicable standard of care: namely, his practice of having pre-signed prescription forms and leaving his medication sample closet unlocked and open to his employees.
Dr. Robert Ryan, a board certified family practice physician and a member of the Medical Review Panel, testified as an expert in the field of family medicine. Dr. Ryan opined that the history taken by Ms. Wilbon was inadequate and that the information documented in the chart did not support a diagnosis of migraine headache. Dr. Ryan also stated that it was a breach of the standard of care for Ms. Wilbon to have not obtained an EKG on Mr. Talbert, because without an EKG it was impossible for Ms. Wilbon to confirm Mr. Talbert’s underlying coronary artery disease. Dr. Ryan further opined that Dr. Evans breached the standard of care by allowing his physician assistants access to his unlocked medication sample closet and pre-signing blank prescription sheets. In Dr. Ryan’s opinion, the Zomig caused a coronary spasm which in turn caused Mr. Tal-bert’s myocardial infarction, which in turn caused his death.
As noted above, just because a particular situation is not mentioned by the Medical Malpractice Act, it does not mean that the activity is not covered by the IftAct. See Coleman v. Deno. When we apply the factors enumerated in Coleman to the conduct in the instant case, we find what happened to Mr. Talbert was definitely treatment related. Medical experts opined that the appropriate standard of care was breached. Clearly, the patient’s condition was not properly assessed. Finally, although Dr. Evans never saw Mr. Talbert, a physician-patient relationship existed between them; this is evidenced by Dr. Evans’s operation of the clinic and his signature on Mr. Talbert’s prescription for Zomig. Accordingly, we find no error in the trial court’s finding that the acts constituted medical malpractice and the PCF was liable.
In its original judgment, the trial court found Dr. Evans 100% liable. Although, the trial court amended this judgment to assign fault to Dr. Evans (30%), *679 LAMC (30%) and Ms. Wilbon (40%), the trial court still referred the parties to its discussion regarding respondeat superior and Dr. Evans’s responsibility for the actions of Ms. Wilbon in its previous judgment. Accordingly, it appears that the trial court intended to hold Dr. Evans 100% liable for the judgment.
LAMC was Dr. Evans’s clinic and he was the sole supervising physician for Ms. Wilbon. Without Dr. Evans, LAMC would not exist and Ms. Wilbon would never have treated Mr. Talbert. Therefore, it goes without saying that Dr. Evans is ultimately responsible for what transpired at his clinic. This includes any malpractice that may have occurred. To the extent that the trial court’s judgment is ambiguous, we amend it to reflect that Dr. Evans is 100% liable for the plaintiffs’ damages.
The plaintiffs contend that the trial court’s damage awards of $75,000.00 for survival and $175,000.00 and $200,000.00 for wrongful death were too low. A trial court’s assessment of quantum is entitled to great deference on review because [9it is a determination of fact. Menard v. Lafayette Ins. Co., 2009-1869, p. 14 (La.3/16/10), 31 So.3d 996, 1007. Therefore, an appellate court should rarely disturb an award on review. Id. It is only when an award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). It is only when an abuse of discretion is found that the reviewing court will determine the highest or lowest point within the court’s discretion. Guillot v. Daimlerchrysler Corp., 2008-1485, p. 30 (La.App. 4 Cir. 9/24/10), 50 So.3d 173, 196; Logan v. Brink’s Inc., 2009-0001, p. 13 (La.App. 4 Cir. 7/1/09), 16 So.3d 530, 540; Riley v. Maison Orleans II, Inc., 2001-0498, p. 11 (La-App. 4 Cir. 9/25/02), 829 So.2d 479, 487. In the instant case, the trial court’s awards for the survival and wrongful death claims are not so low as to indicate an abuse of discretion.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court in all respects except we amend it to indicate that Dr. Evans is 100% liable for the plaintiffs’ damages.
AFFIRMED AS AMENDED
LANDRIEU, J., concurs in the result.