# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-643

ARTHUR WALLER, ET AL.

VERSUS

STATE OF LOUISIANA, DEPARTMENT OF HEALTH & HOSPITALS

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 228,496
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

Pickett, J., concurs and assigns written reasons.

**AFFIRMED.**

William Frank Coco
La. Dept. of Health & Hospital
P. O. Box 3836
Baton Rouge, LA 70802-3836
(225) 342-1128
Counsel for Defendant/Appellant:
State of Louisiana, Department of Health& Hospitals

W. Jay Luneau
Luneau Law Office
1239 Jackson St.
Alexandria, LA 71301
(318) 767-1161
Counsel for Plaintiffs/Appellees:
Arthur Waller, et al.

**Neal Risley Elliott, Jr.**
**Attorney at Law**
**P. O. Box 3836**
**Baton Rouge, LA 70802**
**(225) 342-1128**
**Counsel for Defendant/Appellant:**
**State of Louisiana, Department of Health& Hospitals**

**GREMILLION, Judge.**

The State of Louisiana through the Department of Health and Hospitals appeals a judgment in favor of 121 classified employees of Central Louisiana State Hospital awarding past-due "premium" wages. Additionally, 44 of those employees who are no longer employed at the facility were awarded attorney fees and penalties equal to 90 days' wages. For the reasons that follow, we affirm.

## FACTS

At all relevant times, the plaintiffs/appellees were employed at Central Louisiana State Hospital (Central), a facility operated by the Department of Health and Hospitals (the Department) through its Office of Mental Health (OMH). These employees were considered classified for Civil Service purposes.

In the aftermath of Hurricane Katrina, Charity Hospital in New Orleans lost essential services such as power and water. Hundreds of patients had to be evacuated, including almost 100 psychiatric patients. The Department decided these patients would be sent to Central. The upheaval in the healthcare system caused by Katrina placed extraordinary pressures on the Department's workers.

On September 14, 2005, the State Civil Service Commission met and decided to authorize flexible Special Pay pursuant to Civil Service Rule 6.16(a).[1] This decision gave departments the discretion to pay up to $15.00 per hour for work related to the disaster. The Premium Pay was authorized for the period of August 26, 2005 through February 28, 2006.

On September 26, 2005, Priscilla Shear, Human Resources Director for OMH issued a memorandum to Dr. Cheryll Bowers-Stephens, Assistant Secretary of OMH, outlining pay procedures regarding overtime pay and Premium Pay for classified employees at "Open Facilities," meaning facilities that remained open

---

[1] Rule 6.16(a) allows the Commission to authorize Premium Pay under prescribed conditions, including allowing the State to remain competitive in the employment market and for employees who "perform extraordinary duty that is not an integral part of their regularly assigned duties.

after Katrina.  The memorandum provided that classified employees at Open Facilities would receive $15.00 per hour Premium Pay for overtime hours they worked.  This memorandum was approved by Dr. Bowers-Stephens and forwarded to Central's Chief Executive Officer.

The Chief Executive Officer of Central was Thomas L. Davis.  When Davis was first informed of the arrival of patients from Charity, he had no idea how many patients Central would receive or the conditions of the patients.  He was given notice either one or two days before those patients started arriving.  Central's staff began cleaning and preparing vacant buildings to accommodate these patients.  The nursing staff began preparing for as many medical contingencies as they could foresee.  The dietary staff had to prepare for more than double the number of mouths they normally fed.  All of these conditions had to be dealt with in the same manner as if Central had received patients under normal conditions because the Joint Commission on Hospital Accreditation makes no accommodation for storms.

The patients and staff of Charity arrived at Central beginning around 11:00 p.m. on Friday, September 2, less than 24 hours after Davis was advised to expect them.  Davis testified that the extraordinary duty extended to every department at Central.

When he received the September 26, 2005, memorandum, Davis met with his human resources personnel to ascertain the proper procedures for implementing the Premium Pay authorized by OMH.  The memorandum was forwarded to the human resources department.  Davis and his human resources staff had a difficult time separating Katrina-related overtime from non-Katrina-related overtime.  They decided that all overtime would be included.  This information was disseminated to Central's employees as well as the displaced Charity employees.  When Davis communicated his decision to Dr. Bowers-Stephens' assistant, he was told that although the memorandum could have been interpreted in that manner, such use of

2

the Premium Pay was not in accord with Dr. Bowers-Stephens' intent. The Premium Pay was only intended for those "direct care" employees who worked on "evacuated units."

Subsequently, Davis received an October 25 memorandum from Ms. Shear. This memorandum reproduced the substance of the September 26 memorandum except that it omitted from the Premium Pay regime classified employees at Open Facilities, effectively denying the Central employees the Premium Pay.

The litigation was commenced before the Ninth Judicial District Court. Plaintiffs/appellees demanded Premium Pay for all overtime hours worked plus reasonable attorney fees. The Department responded with Declinatory Exceptions of Improper Venue (arguing that venue was proper only in the Nineteenth Judicial District Court in East Baton Rouge Parish, the domicile of the Department) and lack of Subject Matter Jurisdiction (arguing that exclusive jurisdiction over pay disputes is constitutionally vested with the State Civil Service Commission) and a Dilatory Exception of Vagueness. These exceptions were denied by the trial court. The Department sought writs from this court, which were denied. We found no error in the trial court's ruling. *Waller v. State, Dep't of Health & Hosp.*, 08-1257 (La.App. 3 Cir. 12/8/08) (Unpublished).

The trial court bifurcated the liability and damage phases of the trial. Because no single demand exceeded $50,000.00, the trial was held before the bench alone. The trial court rendered judgment in favor of all claimants in awarding the Premium Pay, and in favor of 44 claimants who have left the Department's employ in awarding penalties equal to 90 days' wages and reasonable attorney fees of 35% of the total award. It is from this judgment the Department appeals.

## ASSIGNMENTS OF ERROR

The Department asserts that the trial court erred in:

3

1. Failing to recognize the State Civil Service Commission's exclusive jurisdiction over pay disputes;
2. Finding that the September 26, 2005 memorandum constituted an offer or promise of Premium Pay to all classified employees;

3. Finding that the employees detrimentally relied on the September 26 memorandum; and,

4. Applying La.R.S. 23:631 to award penalties and attorney fees.

## ANALYSIS

The issue of whether the Civil Service Commission enjoys exclusive subject matter jurisdiction was addressed by this court when the Department sought writs. In denying writs, we found no error. "Unless we refer an issue for appeal, this court does not reconsider matters when, in denying writs, we find no error. Uniform Rules Courts of Appeal 2–18.7; *D'Amico, Curet & Dampf v. Jumonville*, 458 So.2d 903 (La.1984)." *In re Appeal of ANR Pipeline Co.*, 11-379, p. 5, (La. App. 3 Cir. 8/10/11), ___ So.3d ___. A very marked distinction can be drawn between cases in which writs are simply denied and those in which writs are denied on a finding that the trial court did not err. This rationale applies to determinations of whether a tribunal is vested with subject matter jurisdiction. *See Louisiana Land and Exploration Co. v. Verdin*, 95-2579 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, *writ denied*, 96-2629 (La. 12/13/96), 692 So2d 1067, *cert. denied*, 520 U.S. 1212, 117 S.Ct. 1696. A considered writ denial constitutes law of the case. *Id.*

The doctrine of law of the case does not apply in situations in which we find palpable error or in which its application would result in manifest injustice. *Id.* We find neither of these circumstances exist. In *Hawkins v. State through Dep't of Health & Hosp.*, 613 So.2d 229 (La.App. 1 Cir.1992), subject matter jurisdiction with the district court was found properly exercised over a dispute regarding a classified employee's unpaid wages. The Department's argument is principally supported by *Akins v. Housing Auth. Of New Orleans*, 03-1086 (La.App. 4 Cir.

4

9/10/03), 856 So.2d 1220, *writ denied*, 03-2781 (La. 12/19/03), 861 So.2d 574. In *Akins*, the dispute revolved around the claims of police officers for past-due overtime wages plus an accounting for such past-due overtime and a declaration as to future wages. Because of the claims for accounting and declaratory relief, the fourth circuit distinguished *Hawkins*, and held that the suit was for more than a money judgment. We find *Hawkins* applies to the present matter. Thus, the Department's first assignment of error will not be reconsidered on appeal.

By its second assignment of error, the Department contends that the trial court erred in finding that the September 26 memorandum represented an offer or promise of Premium Pay that the employees either tacitly accepted by working overtime or on which they detrimentally relied by working overtime. The trial court's written reasons indicate that its principal finding in this regard was that the memorandum constituted an offer. The employees demonstrated their consent by working overtime. The trial court made a determination that detrimental reliance formed an element of the cause of the contract. These findings are subject to review under the manifest error standard. *See Hibernia Nat. Bank v. Antonini*, 37,836 (La.App. 2 Cir. 12/10/03), 862 So.2d 331.

The manifest error-clearly wrong standard requires that a reviewing court defer to the factual determinations of the trial court, which is better positioned to evaluate the witnesses and evidence and to make determinations of such factors as credibility. *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880 (La.1993). The standard also recognizes the constitutional allocation of judicial functions among trial and appellate courts. *Id.* Under the standard, courts of appeal apply a two-part test: 1) does the record reveal a reasonable basis for the trial court's finding? and, 2) does the record indicate that the finding was clearly wrong? *Id.* "[T]he issue to be resolved by a reviewing court is not whether the

5

trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Id.* at 882.

A contract is an agreement between two or more people whereby obligations are created, modified, or extinguished. La.Civ. Code art. 1906. "A contract is formed by the consent of the parties established through offer and acceptance." La.Civ. Code art. 1927. Unless a particular form is required by law, acceptance need not be made in any particular form, and may be made orally, in writing, or by action or inaction that clearly signals consent. *Id.*

No obligation can exist without a lawful cause. La.Civ. Code art. 1966. "Cause is the reason why a party obligates himself." La.Civ. Code art. 1967. Article 1967 goes on to provide that a promise a party knew or should have known would induce the other party to rely on it to his detriment can obligate the one who made the promise when relying on the promise was reasonable.

The trial court found that detrimental reliance formed an element of the cause in this case. We disagree. Detrimental reliance requires a demonstration that a representation was made, that the one to whom the representation was made justifiably relied, and that the reliance changed his position to his detriment. *Suire v. Lafayette City-Parish Consol. Gov.*, 04-1459, 1460, 1466 (La. 4/12/05), 907 So.2d 37. Central's employees demonstrated no such reliance, because they presented no evidence that they would not have worked overtime had they not been offered the Premium Pay.

A finding that the trial court manifestly erred in its determination that the employees detrimentally relied on the offer of Premium Pay does not foreclose the employees' recovery of the Premium Pay. If there was a valid offer and acceptance, the Department is obligated.

The Louisiana Supreme Court has previously held that the payment of fringe benefits is not a gratuitous act. "It is a reward by the company to promote loyal

6

and efficient service on the part of the employee. The plans are, moreover, an inducement to employees to remain in the service of the company to enjoy the benefits the plan promised. . .The employer expects and receives something in return for his contribution, while the employee, in complying, earns the reward." *T.L. James & Co. v. Montgomery*, 332 So.2d 834, 841 (La.1975). The same rationale applies to the Premium Pay offered to Central's employees. These employees were required to work extended hours under extraordinary circumstances. Central's staff had to take in 90 or more new patients overnight, while maintaining the same standards had there been no storm. They had to house and feed and care for not only 90 new patients but also the staff and families from Charity. The inducement of Premium Pay would serve to promote the loyalty and efficiency of Central's staff, to the benefit of the Department.

In *Knecht v. Board Of Trustees for State Colleges and Universities and Northwestern State Univ.*, 591 So.2d 690 (La.1991), 32 then-current and former employees of Northwestern State University sued the Board of Trustees to recover 47,584 hours of accumulated leave. The board had authorized the accrual of this leave time under an Executive Order that empowered executive appointing officers to permit employees who worked more than their regular hours to earn and accrue hours of compensatory leave time equal to hours of overtime worked. The executive order was not circulated to all employees, but had been communicated to several university administrators. The board subsequently became aware through a newspaper article or audit reports that Northwestern employees were amassing a large number of hours of compensatory leave time and decided to rescind the policy. The supreme court found that once an employee worked overtime a bilateral contract was complete and the board was obligated to grant compensatory leave, subject to the approval of the employee's supervisor as to the time it could be taken. Detrimental reliance played no part in this determination.

7

We are mindful that the *Knecht* decision was based upon the provisions of the Louisiana Civil Code prior to the 1984 revisions, but the revisions did not change the law applicable to this case. Accordingly, the Department's second and third assignments of error are without merit.

By its fourth assignment of error, the Department contends that the trial court erred in applying La.R.S. 23:631 to award penalties and attorney fees. Forty-four of the plaintiffs were no longer employed by the Department at the time this case went to trial. The trial court awarded those employees penalties representing 90 days wages plus attorney fees of 35% of the total recovery of all plaintiffs.[2]

Louisiana Revised Statute 23:631 governs the payment of wages due an employee after he resigns or is terminated. An employee who is terminated or resigns must be paid by the next regular payday or within 15 days of his termination or resignation, whichever occurs first. La.R.S. 23:631(A)(1)(a). If there is a dispute as to the amount of wages owed, the employer must pay the undisputed portion within the prescribed time. La.R.S. 23:631(B). Even when penalty wages may not be due, a well-founded suit for past-due wages can result in an award of attorney fees. La.R.S.23:632; *Carragher v. Pittman Broadcasting Serv., LLC*, 06-857 (La.App. 3 Cir. 12/6/06), 944 So.2d 815. A well-founded suit is one in which the employee is successful in recovering past-due wages. *Cleary v. LEC Unwired, LLC*, 00-2532 (La.App. 1 Cir. 12/28/01), 804 So.2d 916. The statutory language mandates an award of attorney fees "in the event a well-founded suit for any wages whatsoever be filed by the laborer or employee after three days shall have elapsed from the time of making the first demand following discharge or

---

[2] The trial court found that considering the nature of the case and the work performed, recovery of attorney fees in accordance with the contingency fee contract plaintiffs entered into with their counsel was reasonable.

8

resignation." La.R.S. 23:632. This is, of course, predicated on whether La.R.S. 23:632 applies at all.[3]

We find that sections 631 and 632 do apply. Bonuses that form a part of an employer's incentive plan have been held to constitute wages for purposes of La.R.S. 23:361. *Williams v. Dolgencorp, Inc.*, 04-139 (La.App. 3 Cir. 9/29/04), 888 So.2d 260, *writ denied*, 05-174 (La. 3/24/05), 896 So.2d 1042. The Premium Pay was very much an incentive program intended to benefit both the Department and the employees. The Department received additional work and loyalty and the employees received, or were to receive, additional pay. We find the Premium Pay was a component of the employees' wages. The trial court correctly applied the statutes to this dispute.

Courts of appeal review awards of attorney fees to determine whether the trial court abused its discretion in the amount awarded. *Slay v. Old Southern Ins. Co.* 498 So.2d 1129 (La.App. 3 Cir. 1986), *writ denied*, 501 So.2d 235 (1987).

In its written reasons fixing the amount of attorney fees, the trial court stated:

> As to the amount of attorney's fees, plaintiffs seek to be compensated for the full amount of their contingency fee contract with their attorney. Because plaintiffs' counsel was working on a contingency fee basis, he did not present detailed evidence of the time and cost of his services. However, the jurisprudence states that where the record does not detail the time and cost of an attorney's services, a court may nonetheless fix the fee from the record. *Mitchell v. Turner*, 588 So. 2d 1305, 1308 (La. App. 2 Cir. 1991). The following factors are considered to determine an attorney's fee on the basis of quantum merit: the responsibility incurred, the extent and character of the labor performed, the importance of the questions presented, the amount involved, and the legal knowledge and ability of counsel. Id. Other factors may be taken into consideration when determining an appropriate attorney fee, such as result obtained, the responsibility incurred, the importance of the litigation, the amount of money involved, the extent and character of the work performed, the legal knowledge, attainment and skill, of the attorneys, the number of appearances involved, the intricacies of the facts involved, the

---

[3] The statute reads in pertinent part, "Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable. . ." *See Watkins v. St. Martin Parish School Bd.*, 05-1535 (La.App. 3 Cir. 5/3/06), 929 So.2d 846, *writ denied*, 06-1244 (La. 9/15/06), 936 So.2d 1274.

diligence and skill of counsel, and the court's own knowledge of the work involved. *State, Dept. of Transp. & Dev. v. Williamson*, .597 So. 2d 439 (La.1992). Plaintiffs' counsel also cited *Taylor v. Production Services, Inc.*, 600 So. 2d 63, 65 (La. 1992), wherein the Court noted that a one-third contingency fee contract was entered into between the plaintiff and his attorney and found that fee to be reasonable under the circumstances. In *Taylor*, the Louisiana Supreme Court said the following:

> "In determining and fixing the attorney's fees as a part of the reasonable and necessary costs of recovery, the court must adhere to the Code of Professional Responsibility, and may consider but is not bound by the attorney-client contract. To qualify as a reasonable and necessary cost of recovery, the fee must relate to necessary services which actually benefited or augmented recovery from the third person, rather than duplicative services or those designed to benefit a single party such as the mere monitoring of proceedings."

*Id*. at 66. In *Taylor*, the Louisiana Supreme Court acknowledged that attorney's fees may be set on a contingency fee basis if the fee is reasonable.

Applying the jurisprudential factors, the court finds that plaintiffs' counsel's contingency fee is reasonable. The court recognizes the difficulty of representing a large number of plaintiffs, specifically one- hundred-twenty-one (121) plaintiffs with separate wage claims.

Further, the court recognizes the work involved in the discovery in this case. The evidence shows that many hours were spent by plaintiffs' counsel taking depositions and examining documents. Plaintiffs were successful in both portions of the bifurcated trial. Though individually plaintiffs' claims were not worth excessive amounts of money, the total amount due to the plaintiffs by the defendant will be a significant sum of money. Finally, the court acknowledges that these plaintiffs performed work during a time of disaster and devastation in Louisiana. The importance of this litigation is bolstered by their efforts and commitment during the aftermath of Hurricane Katrina.

The trial court correctly applied the appropriate factors to be considered in awarding attorney fees. We adopt as our own the trial court's reasons in awarding attorney fees.

**CONCLUSION**

Whether the trial court properly exercised subject matter jurisdiction over this matter was considered when the Department sought writs. A finding by that panel that the trial court committed no error constitutes law of the case.

The employees of Central were advised that all Katrina-related overtime would be supplemented with Premium Pay. The memorandum issued by the Department unequivocally indicated that Premium Pay was forthcoming. Once the Department offered Premium Pay, and the employees accepted the offer by working overtime, a bilateral contract was perfected between the Department and the employees, which the Department is obligated to fulfill.

The trial court properly applied the statutes governing the payment of wages to employees who are no longer employed at Central. There was no error in the awards of penalty wages or attorney fees.

Costs of this appeal in the amount of $1,714.00 are taxed to appellant, State of Louisiana through the Department of Health & Hospitals.

**AFFIRMED.**

## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-643

**ARTHUR WALLER, ET AL.**

**VERSUS**

**STATE OF LOUISIANA, DEPARTMENT OF HEALTH & HOSPITALS**

**PICKETT, J., concurring.**

I agree with the result reached by the majority in this case. I write separately to disagree with the conclusion reached in *In re Appeal of ANR Pipeline Co.*, 11-379 (La.App. 3 Cir. 8/10/11), ___ So.2d ___, regarding the law of the case doctrine. The law of the case doctrine is always discretionary when this court reviews its own previous decision. I find Rule 2-18.7, which applies to rehearings, inapplicable to cases where we have previously denied supervisory writs, regardless of the reasoning of the writ panel.

In this case, I find no palpable error in the result reached by this court in denying the application for supervisory writs, and find that the state's first assignment of error lacks merit.