# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-1034


**BRANDI BILLEAUDEAU, VERONICA BILLEAUDEAU, AND JOSEPH BILLEAUDEAU**

**VERSUS**

**OPELOUSAS GENERAL HOSPITAL AUTHORITY, DR. KONDILO SKIRLIS-ZAVALA, AND THE SHUMACHER GROUP OF LOUISIANA, INC.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 13-C-0097-D
HONORABLE D. JASON MECHE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, James T. Genovese, and Shannon J. Gremillion, Judges.


**AFFIRMED.**

**Gremillion, J., dissents and assigns written reasons.**

Joseph L. McReynolds
Karen Patricia Holland
John Jerry Glas
Deutsch Kerrigan, LLP
755 Magazine St.
New Orleans, LA 70130-3672
(504) 581-5141
COUNSEL FOR DEFENDANT/APPELLANT:
    Opelousas General Hospital Authority

**Brandon M. Rhodes**
**Nicholas Gachassin, Jr.**
**Nicholas Gachassin, III**
**Gachassin Law Firm**
**P. O. Box 80369**
**Lafayette, LA 70598**
**(337) 235-4576**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Opelousas General Hospital Authority**

**Kara Hadican Samuels**
**Nora R. Udell**
**Kara Hadican Samuels & Associates, L.L.C.**
**935 Gravier Street, Suite 1150**
**New Orleans, LA 70112**
**(504) 558-9478**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Veronica Billeaudeau**
    **Joseph Billeaudeau**

**PICKETT, Judge.**

Opelousas General Hospital Authority (Opelousas General) appeals a judgment of the trial court holding that a claim for "negligent credentialing" of a physician by a hospital does not constitute medical malpractice subject to the terms of the Louisiana Medical Malpractice Act (MMA), La.R.S. 40:1231.1, et seq.

## FACTS

On June 20, 2010, Brandi Billeaudeau was taken to Opelousas General after collapsing in her parents' home. Brandi is a thirty-five-year-old woman with Down syndrome. Veronica Billeaudeau, Brandi's mother and a nurse, and her husband Joseph transported their daughter to the hospital, where she was diagnosed by the emergency room (ER) physician, Dr. Kondilo Skirlis-Zavala, with focal motor seizure. Dr. Skirlis-Zavala ordered the administration of anti-seizure medication and a CT scan, which was reported as normal.

The Billeaudeaus disagreed with the doctor's diagnosis and thought their daughter had suffered a stroke. They asked that their daughter be given tPA (t-plasminogen activator), a treatment for stroke victims. However, according to the allegations of the Billeaudeaus, they were informed that their daughter was not a candidate for tPA. The Billeaudeaus requested that Brandi be transferred to Our Lady of Lourdes (OLOL) in Lafayette. Dr. Skirlis-Zavala arranged for Brandi to be transferred to OLOL, where she was given tPA four hours after she suffered what was ultimately determined to be a stroke.

Veronica Billeaudeau, individually and as curatrix of Brandi, and Joseph Billeaudeau pursued a claim under the MMA and brought suit in general negligence against Opelousas General, among other defendants. They filed a motion for partial summary judgment asking that the trial court declare that their

demands against Opelousas General for negligent credentialing were not subject to the terms of the MMA, including the cap on damages found in La.R.S. 40:1231.2(B)(1). The trial court granted this motion.

Opelousas General sought a writ of supervisory review from this court, which was denied. *Billeaudeau v. Opelousas Gen. Hosp. Auth.*, 15-821 (La.App. 3 Cir. 9/28/15) (unpublished). One member of the panel dissented and would have granted the writ application. Opelousas General then sought a writ of certiorari from the Louisiana Supreme Court, which was also denied. *Billeaudeau v. Skirlis-Zavala*, 15-1948 (La. 11/30/15), 182 So.3d 43. In the meantime, the trial court certified its grant of partial summary judgment as a final judgment. Opelousas General has now filed this appeal.

## ASSIGNMENTS OF ERROR

On appeal, Opelousas General asserts three assignments of error (footnotes omitted):

> 1. Contrary to the holding in *Plaisance v. Our Lady of Lourdes Regional Medical Center, Inc.*, [10-348 (La.App. 3 Cir. 10/6/10), 47 So.3d 17, *writ denied*, 10-2520 (La. 1/14/11), 52 So.2d 904)] the district court erred in its legal conclusion that a "negligent credentialing" claim coupled with a negligent supervision claim against a hospital, qualified as a health care provider, did not constitute an act of "malpractice" under Louisiana's Medical Malpractice Act ("LMMA"), La.R.S. 40:1231.1(A)(13).

> 2. The trial court's error was induced by disregarding its own analysis of the negligent credentialing claim under the *Coleman v. Deno*[, 01-1517 (La. 1/25/02), 813 So.2d 303,] factors that produced a contrary conclusion.

> 3. The trial court's error was compounded by employing an *expression unius est exclusion alterius* statutory analysis that misapprehends the rule of strict construction and leads to an absurd conclusion the Legislature must have intended to exclude "negligent credentialing" claims from the LMMA's definition of "malpractice" coverage when it amended that definition in 2001 to include "all legal responsibility of a health care provider arising from acts or

2

omissions . . . in the training or supervision of health care providers . . . ."

## ANALYSIS

This court has already ruled on this exact issue in an application for supervisory writs. Thus, the discretionary "law of the case" doctrine is clearly applicable.

> This doctrine provides that "an appellate court will not reconsider its own rulings of law in the same case." *Lejano v. Bandak*, 97–388, p. 23 (La.12/12/97), 705 So.2d 158, 170, *cert. denied*, 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998). This doctrine, however, is purely discretionary and will not apply "in cases of palpable error or when, if the law of the case were applied, manifest injustice would occur.'" *Id.*

*Shailow v. Gulf Coast Soc. Servs.*, 15-91, p. 7 (La. App. 3 Cir. 6/10/15), 166 So.3d 1239, 1245-46, *writs denied*, 15-1336, 15-1355 (La. 10/9/15), 178 So. 3d 1002, 1003. We will review the ruling of this court to determine if there is palpable error.

We review summary judgments de novo, applying the same criteria the trial court considered in determining whether summary judgment was appropriate. *Gray v. Am. Nat'l Prop. & Cas. Co.*, 07-1670 (La. 2/26/08), 977 So.2d 839.

Every medical malpractice claim asserted against a health care provider that is properly qualified must be pursued subject to the terms of the MMA. La.R.S. 40:1231.8(A)(1)(a); La.R.S. 40:1231.2(B). The MMA defines malpractice as:

> [A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

3

La.R.S. 40:1231.1(A)(13). Whether certain acts or omissions constitute "malpractice" under the MMA's definition has been extensively litigated. The supreme court has provided the analytical framework within which such an analysis is to take place. In *Coleman v. Deno*, 01-1517, 01-1519, 01-1521, pp. 17-18 (La. 1/25/02), 813 So.2d 303, 315-16, the supreme court enunciated the test (citations and footnote omitted):

> In determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the MMA this court has utilized the following three factors:
>
> > "[1] whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill,
> >
> > [2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, and
> >
> > [3] whether the pertinent act or omission involved assessment of the patient's condition."
>
> The latter annotation lists three additional factors that courts have considered, and we now add those to our *Sewell* [*v. Doctors Hosp.*, 600 So.2d 577 (La.1992)] list; to wit:
>
> > [4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
> >
> > [5] whether the injury would have occurred if the patient had not sought treatment, and
> >
> > [6] whether the tort alleged was intentional.

The Billeaudeaus contend that negligent credentialing is not subject to the terms and limitations of the MMA. They allege that Opelousas General's decision to grant credentials to Dr. Skirlis-Zavala is an administrative decision, not a medical decision. They claim Opelousas General negligently allowed Dr. Skirlis-Zavala to have privileges in its emergency department because she lacked the

4

experience and training required by Opelousas General's own by-laws governing the granting of privileges. They also allege that Opelousas General failed to follow-up on a "qualified" reference given by an emergency medicine physician at the time Dr. Skirlis-Zavala was granted privileges. Finally, the Billeaudeaus argue that Opelousas General failed to investigate two malpractice claims filed against Dr. Skirlis-Zavala before she sought privileges at the hospital.

Before analyzing this case in light of the *Coleman* factors, we note the difficulty of applying these factors to a claim for negligent credentialing, which is not purely a medical decision. The first *Coleman* factor is whether the particular wrong is treatment related. The Billeaudeaus focus on Dr. Skirlis-Zavala's relative inexperience in emergency medicine and stroke diagnosis in particular. They also point out that Dr. Skirlis-Zavala attended medical school in Mexico, and that she had two malpractice claims filed against her at the time she applied for privileges at Opelousas General.

In *Plaisance v. Our Lady of Lourdes Regional Medical Center, Inc.*, 10-348 (La.App. 3 Cir. 10/6/10), 47 So.3d 17, *writ denied*, 10-2520 (La. 1/14/11), 52 So.3d 904, this court engaged in an exhaustive examination of each of the *Coleman* factors to determine whether a claim for "negligent credentialing" constituted a malpractice claim. In *Plaisance*, the plaintiff claimed the hospital was negligent in originally credentialing a physician and allowing him to retain his credentials in light of multiple allegedly unsatisfactory medical procedures performed on the plaintiff. In that case, we found the particular wrong was treatment related because it required the court to review the treatment that physician provided to that plaintiff, and the hospital's decisions in light of the plaintiff's allegations of substandard care.

5

This case is distinguishable from *Plaisance* in that it does not require the court to review the treatment of Brandi in determining whether Opelousas General acted negligently in hiring Dr. Skirlis-Zavala. We find the first *Coleman* factor weighs against treating the claim of negligent credentialing as medical malpractice.

The second factor determines whether the wrong requires expert testimony to determine whether there was a breach of the standard of care. In *Plaisance*, we found that the hospital's response to the physician's alleged breach of the standard of care required testimony about the standard of care from experts. In this case, though, the question is whether Dr. Skirlis-Zavala was qualified to practice emergency medicine in general based on her education, experience, and certifications. While expert testimony will surely be required, it is of a different character than what we found necessary in *Plaisance*. The applicable standard of care is not the proper administration of tPA, but the hospital's decision-making process in evaluating qualifications necessary to work as an ER doctor. While we find this factor weighs in favor of finding that the claim sounds in malpractice, we note that the expert testimony is of a different nature than that which we found in *Plaisance*.

An analysis of the hospital's credentialing methods as they relate to Dr. Skirlis-Zavala does not require any assessment of Brandi's condition. This third *Coleman* factor mitigates against considering this a malpractice matter.

The fourth *Coleman* factor is a determination of whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities a hospital is licensed to perform. In *Plaisance*, 47 So.3d at 22, this court explained that Louisiana Revised Statutes 40:2114(E) provides that "[a] hospital shall establish rules, regulations, and procedures setting forth the nature,

extent, and type of staff membership and clinical privileges, as well as the limitations placed by the hospital on said staff membership and clinical privileges for all health care providers practicing therein." Thus, credentialing is within the scope of activities that a hospital is licensed to perform, and this factor weighs in favor of treating the claim as falling under the MMA.

The fifth factor questions whether the injury would have occurred if the patient had not sought treatment. If Brandi's parents had not sought treatment for her at Opelousas General, this claim would never have been filed. We find this to be a peculiarly circular type of analysis. While Brandi's alleged injuries relate to the treatment provided by Dr. Skirlis-Zavala, the credentialing decisions of Opelousas General are not necessarily tied to the treatment of Brandi. We agree with the trial court that it is difficult to apply this factor to this case, but conclude that it weighs against treating the claim as malpractice.

There is no allegation of an intentional tort, so the final factor is not applicable in this case.

We find that the claim for negligent credentialing, when analyzed under the *Coleman* framework, is not a claim of malpractice under the MMA. In so concluding, we are mindful that the limitations of the MMA are in derogation of general tort law, and should, therefore, be strictly construed in favor of plaintiffs. *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 04-451 (La. 12/1/04), 888 So.2d 782.

Further, we note that the legislature in 2001 amended the definition of "malpractice" in La.R.S. 40:1299.41(A)(8) (since redesignated La.R.S. 40:1231.1(A)(13)) to include the "acts or omissions . . . . in the training or supervision of health care providers[.]" 2001 La. Acts No. 713, § 1. The original

7

bill introduced in the senate would have included "acts or omissions in the hiring, training, supervision, or retention of caregivers[.]" On three other occasions, bills were introduced in the Louisiana legislature to include "credentialing" in the definition of medical malpractice. *See* 2005 House Bill No. 257; 2006 House Bill No. 260; and 2008 Senate Bill No. 509. Each of these bills failed to become law. We will not create law by judicial fiat when, as here, the legislature clearly failed to do so.

We find no palpable error in this court's previous denial of supervisory writs, and we affirm the judgment of the trial court finding that the claims of "negligent credentialing" are not claims of malpractice under the MMA. The case is remanded to the trial court for further proceedings. Costs of this appeal are assessed to the Opelousas General Hospital Authority.

**AFFIRMED.**

BRANDI BILLEAUDEAU

VERSUS

OPELOUSAS GENERAL HOSPITAL HEALTH SYSTEM, ET AL.

**GREMILLION, Judge, dissenting.**

I dissent from the majority's opinion.  I would reverse the trial court.

Initially, I disagree with the majority's contention that this matter is governed by the doctrine of law of the case by virtue of the denial of the Authority's application for writs.  The denial was simple.  There was no finding in the denial that the trial court did not err.  In fact, Judge Peters concurred specifically on the basis that he would find no error on the trial court's part.  Without a determination that the trial court did not err, a denial of writs does not constitute law of the case.  *See Waller v. State, Dep't of Health and Hosps.*, 11-643 (La.App. 3 Cir. 11/9/11), 79 So.3d 1085, *writ denied*, 11-2692 (La. 2/10/12), 80 So.3d 488; *In re Appeal of ANR Pipeline Co.,* 11–379 (La.App. 3 Cir. 8/10/11), 73 So.3d 398; *Cormier v. McNeese State Univ.*, 13-12 (La.App. 3 Cir. 11/13/13), 127 So.3d 66.

The Billeaudeaus contend—and, presumably, the majority agrees—that negligent credentialing represents a "distinct cause of action" from the medical malpractice claim.  This cannot be, of course, because "[t]he cause of action is the state of facts which gives a party a right to judicially assert an action against the defendant."  *Trahan v. Lib. Mut. Ins. Co.*, 314 So.2d 350, 353 (La.1975).  That

necessarily encompasses the determination of whether the plaintiff has suffered damages. Before the alleged acts and omissions on Dr. Skirlis-Zavala's part, the Billeaudeaus could have sustained no damage from the credentialing decision of the authority. The claim for negligent credentialing does not—logically, cannot— constitute a separate cause of action.

Every medical malpractice claim asserted against a health care provider that is properly qualified must be pursued subject to the terms of the MMA. La.R.S. 40:1231.8(A)(1)(a); La.R.S. 40:1231.2(B). "Malpractice" is defined as (emphasis added):

> [A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, *and also includes **all legal responsibility of a health care provider** arising from acts or omissions during the procurement of blood or blood components, **in the training or supervision of health care providers***, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

La.R.S. 40:1231.1(A)(13). What acts or omissions constitute "malpractice" under the MMA's definition has been extensively litigated. In my opinion, the fact that the damages were caused by alleged malpractice and not the credentialing of a physician should end the analysis. Nonetheless, I will willing engage the majority within the context of the supreme court's jurisprudence on this issue.

The supreme court has provided the analytical framework within which such an analysis is to take place. In *Coleman v. Deno*, 01-1517, 01-1519, 01-1521, pp. 17-18 (La. 1/25/02), 813 So.2d 303, 315-16, the supreme court enunciated the test (citations and footnote omitted):

2

In determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the MMA this court has utilized the following three factors:

> "[1] whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill,
>
> [2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, and
>
> [3] whether the pertinent act or omission involved assessment of the patient's condition."

The latter annotation lists three additional factors that courts have considered, and we now add those to our *Sewell* list; to wit:

> [4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
>
> [5] whether the injury would have occurred if the patient had not sought treatment, and
>
> [6] whether the tort alleged was intentional.

The Louisiana Supreme Court has quoted with approval our colleagues on the Second Circuit Court of Appeal, who stated (emphasis added):

> "In general, any conduct by a hospital complained of by a patient is properly within the scope of the [MMA] if it can reasonably be said that it comes within the definitions of the Act, *even though there are alternative theories of liability*."

*Richard v. Louisiana Extended Care Ctrs., Inc.*, 02-978, p. 11 (La. 1/14/03), 835 So.2d 460, 467-68 (quoting *Rogers v. Synthes, Ltd.*, 626 So.2d 775, 777 (La.App. 2 Cir.1993). Negligent credentialing is simply a theory of liability and not a cause of action.

The first reported case that invoked the theory of negligent credentialing is *Bickham v. Inphynet, Inc.*, 03-1897 (La.App. 1 Cir. 9/24/04), 899 So.2d 15. *Bickham* was a case that arose before the MMA's definition of "malpractice" was

amended to include "acts of omissions in the training or supervision of health care providers." *See* 2001 La. Acts No. 108. The majority of the court found that the claim for negligent credentialing fell outside the scope of the MMA. In dissent, then-Judge Guidry, writing for himself and four other judges, observed, correctly, in my opinion:

> In order for Mr. Bickham to prove the tort of negligent credentialing, he must first establish that a negligent act of Dr. Yacoub proximately caused his injury before he can proceed against Riverside. As a result, it is inappropriate to look only to the credentialing conduct alleged in the complaint to determine whether it sounds in malpractice or in ordinary negligence. The credentialing process alleged must have resulted in a definable act of medical malpractice that caused damage to Mr. Bickham or Mr. Bickham would be without a basis to bring the suit against Riverside. *See Armand*, 97–2958 at p. 10, 729 So.2d at 1090; *Williams*, 00–0365 at pp. 1–2, 801 So.2d at 464–465 (Guidry, J., dissenting); *Winona Memorial Hospital v. Kuester,* 737 N.E.2d 824, 828 (Ind.App.10/24/00). Therefore, when examining these two acts together, it is clear that the credentialing conduct directly impacts, involves, and is related to the treatment received by Mr. Bickham, and as such, is related to the provision of health care.

*Bickham v. Inphynet, Inc.*, 03-1897, p. 18 (La. App. 1 Cir. 9/24/04), 899 So. 2d 15, 18. The act of credentialing does not cause damage; it is the act or omission alleged against the health care provider that causes damage.

The first circuit reached a similar conclusion in a second pre-2001 case, *Eusea v. Blanchard*, 04-1855 (La.App. 1 Cir. 2/11/05), 899 So.2d 41, which also, like *Bickham*, involved allegations of negligent supervision and training in addition to negligent credentialing.

In *Dinnat v. Texada*, 09-665 (La.App. 3 Cir. 2/10/10), 30 So.3d 1139, *writ denied*, 10-540 (La. 6/18/10), 38 So.3d 322, this court found that a claim for "negligent credentialing" was actually a claim for negligent supervision. Accordingly, we granted writs and peremptorily reversed the trial court judgment

4

denying an exception of prematurity on the basis that such a claim was not required to be presented to a medical review panel.

In *Plaisance v. Our Lady of Lourdes Regional Medical Center, Inc.*, 10-348 (La.App. 3 Cir. 10/6/10), 47 So.3d 17, *writ denied*, 10-2520 (La. 1/14/11), 52 So.3d 904, this court engaged in an exhaustive examination of each of the *Coleman* factors to determine whether a claim for "negligent credentialing" constituted a malpractice claim. In the final analysis, this court concluded that the claim was subject to the MMA. Thus, for the first time since the MMA was amended to include physician oversight issues within the definition of "malpractice," a court has concluded that such a claim is not subject to the MMA.

The Billeaudeaus complain that the Authority negligently credentialed Dr. Skirlis-Zavala in the following respects, as asserted in their motion for partial summary judgment:

> Based upon information obtained during discovery in the panel phase of this suit, the Billeaudeaus brought a credible negligent credentialing claim against OGH concerning its credentialing of Dr. Zavala—a physician who attended medical school in Mexico, obtained a family practice certification in 2005, began working in Louisiana emergency departments in 2006, and by the time of her application for emergency department privileges to OGH in 2009, had racked up not one, but two medical malpractice complaints that had resulted in settlements.

> It is clear that Plaintiffs' [sic] have a medical malpractice action subject to the LMMA concerning Dr. Zavala's care and treatment. However, their claim of negligent credentialing against OGH is not subject to the LMMA. Pertinent to the Court's analysis is the Plaintiffs' Petition for Damages, which alleges:

> - Dr. Zavala completed a residency in family practice in 2005 and has been working with the Schumacher Group since 2006. She is not a board-certified emergency medicine physician. Prior to this incident, she had diagnosed stroke on only five other occasions. Also, prior to this incident, she

5

> had administered tPA in the emergency department on only two other occasions.

- Defendant, Opelousas General Hospital, it's liable unto Petitioners because Ms. Billeaudeau's injuries, and damages, which will be specified hereinafter, were proximately and legally caused by the fault, including negligence, of Opelousas General Hospital and its officers, agents, employees and those for whom it is legally responsible, including the following negligent acts of omission and commission, among others, which may be shown during the trial; . . (e) Negligent credentialing of Dr. Zavala.

***[1] Whether the particular wrong is "treatment related" or caused by dereliction of professional skill***

The Billeaudeaus focus on Dr. Skirlis-Zavala's relative inexperience in emergency medicine and stroke diagnosis in particular. They also point to her attendance at a Mexico medical school instead of one located in the United States, and on Dr. Skirlis-Zavala's two malpractice claims, which were asserted before she applied for privileges at Opelousas General. Unlike the demands in *Plaisance*, these assertions relate to conduct that occurred before Dr. Skirlis-Zavala was granted privileges at Opelousas General, and, thus, are not "treatment related" per the *Coleman* analysis. I agree with the majority on this point.

***[2] Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached***

In *Plaisance*, the wrong alleged against the hospital included allegations that the hospital's response to the doctor's "alleged deficient performance of medical procedures" was inadequate or negligent. *Id*. at 22. We found, "It follows that expert medical evidence would be required to determine whether Dr. Beauregard was qualified to perform the medical procedures, whether he committed

6

malpractice, and whether that malpractice necessarily created a duty on the hospital to take action." *Id.* This matter will be no different, whether one is asking whether a hospital is required to take action to suspend a doctor's privileges in light of alleged malpractice after his privileges have been extended or, as in the present case, the issue involves claims against the doctor before the privileges have been extended. Because expert testimony is required, an analysis of the second *Coleman* factor would indicate that this matter sounds in malpractice.

***[3] Whether the pertinent act or omission involved assessment of the patient's condition***

An analysis of the hospital's credentialing methods as they relate to Dr. Skirlis-Zavala does not require any assessment of Ms. Billeaudeau's condition. This factor mitigates against considering this a malpractice matter.

***[4] Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform***

In *Plaisance*, this court stated:

> The plaintiffs' petition alleges that Lourdes was aware of certain negligent acts of Dr. Beauregard "yet failed to suspend or revoke [his] privileges." Louisiana Revised Statutes 40:2114(E) provides that "[a] hospital shall establish rules, regulations, and procedures setting forth the nature, extent, and type of staff membership and clinical privileges, as well as the limitations placed by the hospital on said staff membership and clinical privileges for all health care providers practicing therein." Thus, Lourdes's action or inaction regarding Dr. Beauregard's privileges is within the scope of activities a hospital is licensed to perform, and the fourth factor is satisfied. *See Dinnat v. Texada,* 09–665 (La.App. 3 Cir. 2/10/10), 30 So.3d 1139, *writ denied,* 10–540 (La.6/18/10), 38 So.3d 322.

Every credentialing decision a hospital makes would be subject to the MMA were only this factor considered.

*[5] Whether the injury would have occurred if the patient had not sought treatment*

As in *Plaisance*, the injuries Ms. Billeaudeau sustained would not have happened had she not been treated by Dr. Skirlis-Zavala, according to the petition filed by the Billeaudeaus. Again, this factor mitigates in favor of the matter being considered subject to the MMA.

*[6] Whether the tort alleged was intentional*

There has been suggested nothing to indicate that the alleged tort was intentional.

It appears, then, that of the six factors listed in *Coleman*, four factors— 2, 4, 5, and 6—lead to the conclusion that the Billeaudeau's claim for negligent credentialing of Dr. Skirlis-Zavala is a malpractice claim and subject to the MMA.

Thus, not only the *Plaisance, Dinnat*, and *Eusea* decisions, but also *Coleman*, provides judicial objections to the majority's view. But, my disagreement with my colleagues comes from an even more fundamental place: basic logic. Moreover, the rationale articulated in *Coleman* forces us to ask some questions. Assume that the factfinder determines to a certainty that a hospital DID negligently credential a doctor, but also that the same factfinder finds that the same doctor DID NOT commit medical malpractice.

- How much should the plaintiff recover from the doctor who DID NOT commit malpractice on her?

- How much should the plaintiff recover from the hospital under whose roof she lay as she WAS NOT subjected to malpractice?

- What is the proper penalty for credentialing a doctor who treats his or her patient properly and who DOES NOT fall below the appropriate standard of care?

- Where is the necessary connection between the alleged liability and the alleged damage?

Of course, the answer to each of these questions is NOTHING AT ALL. No recovery. No penalty. No connection. To reach another conclusion would defy logic. Such a conclusion would also extend a cause of action to every single patient the doctor ever treated at the hospital, completely regardless of the question of the doctor's alleged malpractice. Simply allowing a bad doctor access to patients at your hospital, without more, gets a plaintiff nowhere. It is only when that bad doctor does bad things to a patient, and those bad things result in damages, that a patient may recover. That is what the *Coleman* court and the *Plaisance* court both recognized. The majority should have recognized it as well.

### *Legislative intent*

Lastly, the majority claims that the legislature's rejection of credentialing as a matter covered by the MMA expresses the legislature's intent that credentialing not be covered by the Act. Again, I disagree. It simply does not logically follow that because the legislature excluded language specifically including credentialing from the Act, the legislature intended for credentialing to not be covered (particularly when one considers the all-encompassing language the Act employs in defining malpractice); one can just as easily conclude that the legislature felt that such an amendment was unnecessary, because the act of hiring an employee is an act of supervision of the employee.

I would reverse the trial court.