# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-445


**SPARTAN DIRECTIONAL, L.L.C.**

**VERSUS**

**ENERGY SERVICES SOUTH, L.L.C.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20213899
HONORABLE VALERIE GOTCH GARRETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## D. KENT SAVOIE
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Charles G. Fitzgerald, and Gary J. Ortego, Judges.


**AFFIRMED.**


**Fitzgerald, J., concurs without assigning reasons.**
**Ortego, J., concurs without assigning reasons.**

**Cade A. Evans**
**Robert A. Robertson**
**Allen & Gooch, APLC**
**2000 Kaliste Saloom Road, #400**
**Post Office Box 81129**
**Lafayette, Louisiana 70508**
**(337) 291-1310**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Spartan Directional, L.L.C.**

**Robert H. Ford**
**Melissa Gutierrez Alonso**
**Bradley Arant Boult Cummings LLP**
**600 Travis Street, Suite 4800**
**Houston, Texas 77002**
**(713) 576-0356**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Energy Services South, L.L.C.**

**SAVOIE, Judge.**

Plaintiff Spartan Directional, L.L.C. (Spartan) appeals the judgment of the trial court, granting the exceptions of improper venue and prematurity filed by Defendant Energy Services South, L.L.C. (ESS) and dismissing Spartan's claims without prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

ESS entered into a prime contract with Plains GP, LLC (Plains) for ESS to serve as the general contractor to perform work on the construction of a crude oil pipeline from Arkansas to Tennessee. ESS subsequently entered into a subcontract with Spartan to construct drilling and crossing services at several locations along the pipeline. Spartan alleges ESS informed Spartan that Plains refused to pay for work, material, and services under a change order, which included a total of $827,684.34 that was owed to Spartan. Spartan further alleges that as a result, ESS gave Spartan $100,000.00, with a promise of future work in an amount that would equal or surpass the amount that Spartan was supposed to be paid under the change order. ESS failed to follow through with future work.

Several years later, in March 2021 and once the pipeline was completed, Spartan maintains that it discovered that it had been misled by ESS, and ESS had received payment from Plains under the change order for the total amount of $1,972,000.00. Consequently, Spartan filed a federal lawsuit on May 28, 2021, in the United States District Court for the Western District of Louisiana, asserting claims for fraud, unfair trade practices, breach of contract, and/or negligence. Spartan then filed the instant lawsuit in the Fifteenth Judicial District Court, alleging the same claims in the federal lawsuit. Spartan eventually dismissed the federal lawsuit. In response to the present lawsuit, ESS filed exceptions of

prematurity and improper venue, arguing that, pursuant to the subcontract at issue, Spartan's claims are subject to arbitration, and venue for all litigation and arbitration is proper in Dallas County, Texas.

The trial court granted ESS's exceptions, finding that a valid contract exists between the parties and that Spartan's claims are governed by the contract. The trial court further found:

> While La. C.C.P. art. 76.1 provides that "[a]n action on a contract *may* be brought in the parish where the contract was executed or the parish where any work or service was performed or was to be performed under the terms of the contract" (emphasis added) that statute is superseded by the forum selection clause included in the contract.

The trial court stated, "[b]ecause the parties did not attempt to arbitrate the conflicts before filing suit, and because the suit was filed in Lafayette Parish rather than in Arkansas as agreed in the forum selection clause, [Spartan's] petition is both untimely and in improper venue."

In response to the trial court's ruling, Spartan filed both a notice of intent to seek supervisory writs and a motion to appeal the judgment in the case. A panel of this court issued a writ ruling on the same issues that are now on appeal on June 14, 2022, denying the writ and finding "no error in the trial court's ruling."

We will now review Spartan's appeal.

## ASSIGNMENTS OF ERROR

1. The trial court committed manifest error and/or abused its discretion when granting ESS's exception of venue and/or prematurity.

2. The trial court committed manifest error and/or abused its discretion when ruling that Arkansas is the correct jurisdiction and/or venue with regard to the claims arising under the subcontract.

First, we will address ESS's argument that the law of the case doctrine applies to this matter. As previously noted, Spartan filed both a notice of intent to seek writs and a motion to appeal the judgment in response to the trial court's judgment. Spartan's writ application and motion for appeal set forth the same arguments. As such, ESS contends that we should refrain from considering the arguments made on appeal by Spartan based on the law of the case doctrine because this court denied Spartan's supervisory writ, finding no error in the trial court's ruling.

In *Louisiana Land & Exploration Co. v. Verdin*, 681 So.2d 63 (La.App. 1 Cir.), *writ denied*, 692 So.2d 1067 (La.1996), *cert. denied*, 520 U.S. 1212, 117 S.Ct. 1696 (1997), the defendants filed a writ application on the issue of subject matter jurisdiction with the appellate court. The appellate court denied the writ, finding no error with the trial court's ruling. After trial, the defendants filed an appeal and assigned as error the issue of subject matter jurisdiction. The plaintiff contended that the subject matter jurisdiction issue was already decided by the appellate court; and therefore, the law of the case doctrine applied. The appellate court explained:

> The law of the case principle is a discretionary guide which relates to (a) the binding force of a trial judge's ruling during the later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. *Glenwood Hospital, Inc. v. Louisiana Hospital Service, Inc.,* 419 So.2d 1269 (La.App. 1 Cir.1982). It applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. *Brumfield v. Dyson,* 418 So.2d 21 (La.App. 1 Cir.), *writ denied,* 422 So.2d 162 (La.1982). Reargument in the same case of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. However, the law of the case principle is not applied in cases of palpable error or where, if the law of the case were applied,

manifest injustice would occur. *Glenwood Hospital, Inc. v. Louisiana Hospital Service, Inc.,* 419 So.2d 1269 (La.App. 1 Cir.1982).

The reasons for the "law of the case" doctrine is to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. *Day v. Campbell–Grosjean Roofing and Sheet Metal Corp.,* 260 La. 325, 256 So.2d 105 (1971).

When an appellate court considers arguments made in supervisory writ applications or responses to such applications, the court's disposition on the issue considered usually becomes the law of the case, foreclosing relitigation of that issue either at the trial court on remand or in the appellate court on a later appeal. *Easton v. Chevron Indus., Inc.,* 602 So.2d 1032 (La.App. 4 Cir.), *writ denied,* 604 So.2d 1315 (La.1992). However, where a prior disposition is clearly erroneous and will create a grave injustice, it should be reconsidered. *Dodson v. Community Blood Center of Louisiana, Inc.,* 633 So.2d 252 (La.App. 1 Cir.1993), *writs denied,* 93–3158, 93–3174 (La.3/18/94), 634 So.2d 850, 851. In the instant case, we find no such error. Therefore, our prior ruling that state court does have subject matter jurisdiction over this matter is law of the case and we will not review this issue on appeal.

*Id.* at 65. *See Richman v. Travelers Indem. Co.*, 21-459 (La.App. 3 Cir. 6/8/22), 344 So.3d 77, *rev'd on other grounds*, 22-1059 (La. 11/1/22), 348 So.3d 1279.

Similarly, in *Billeaudeau v. Opelousas General Hospital Authority*, 16-846 (La. 10/19/16), 218 So.3d 513, the defendant filed a supervisory writ that was denied by the appellate court. On appeal, the defendant assigned as error the same issue that was the basis for the writ. The court explained, "This court has already ruled on this exact issue in an application for supervisory writs. Thus, the discretionary 'law of the case' doctrine is clearly applicable." *Id*. at 564. This court then reviewed the ruling of the trial court to determine if there was palpable error.

"A very marked distinction can be drawn between cases in which writs are simply denied and those in which writs are denied on a finding that the trial court

did not err." *Waller v. State, Dep't. of Health & Hosps.*, 11-643, p. 4 (La.App. 3 Cir. 11/9/11), 79 So.3d 1085, 1089, *writ denied*, 11-2692 (La. 2/10/12), 80 So.3d 488. "A considered writ denial constitutes law of the case." *Id.*

Based on the foregoing, we will review this matter to determine if palpable error resulting in manifest injustice would occur if the law of the case doctrine is applied. The parties do not dispute that the Subcontract includes an arbitration clause and a forum selection clause. The only dispute is whether the Subcontract applies to the claims made in Spartan's petition.

Spartan asserts that while the written subcontract applied to the initial work that was to be completed by Spartan at the Waverly Road and Ten Mile Bayou Drills, it does not apply to drilling and crossing services that were to be performed at the Piney Creek location pursuant to a change order. The request for Spartan to perform additional services at the Piney Creek location was not made until sometime after the written subcontract was executed. This litigation stems from work performed at the Piney Creek location. Therefore, it is Spartan's contention that the subcontract does not apply to this matter.

Spartan further contends that ESS failed to comply with the notice provision in the Subcontract which specifies that Spartan be notified of any additional drill work and be allowed to accept the additional work. Consequently, Spartan argues that because ESS failed to add the Piney Creek Drill to the subcontract through written notice, the provisions of the subcontract do not apply to the drill work which was done at Piney Creek pursuant to the change order. Spartan additionally maintains that the written subcontract does not apply because its claims arise out of a settlement agreement which was induced by fraud. Spartan alleges that ESS tricked it into accepting $100,000.00 and a promise of future work that would

5

equal the amount owed under the change order. Thus, Spartan argues that the agreement with ESS to accept the $100,000.00 and promise of additional work was separate and distinct from the written subcontract which required the parties to submit their claims for dispute resolution.

The subcontract between ESS and Spartan is dated November 7, 2016, and states that ESS entered into a contract with Plains to perform construction work on the Diamond Spread 3 Project. Under "Terms and Conditions," the subcontract states:

**Terms and Conditions**

1. **Scope of Subcontract Work.** Unless expressly excluded or otherwise noted by this Subcontract, Subcontractor shall furnish and pay for everything that is required to perform and complete the work described in the attached **EXHIBIT A** (the "Work"), including: all labor, materials, taxes, permits, royalties, fees, supplies, equipment, insurance, testing, and each and every item and expense. Subcontractor's Work shall strictly comply with the Contract, this Subcontract and be performed in a high quality manner according to applicable law, regulations, ordinances, and the highest industry codes and practices.

Exhibit A sets forth the scope of work associated with the project, explaining:

If a drill number is listed below, it means that Contractor has selected that specific drill to be completed by the Subcontractor, the Subcontractor has accepted the assignment, and the specific drill becomes part of the scope of Work. The item number(s) refer to the same item number(s) shown in the List of Potential Drills included in Exhibit E, and that same table has the agreed upon costs for each specific drill.

If a drill is not listed below, it has not been assigned by the Contractor and is not part of the scope of Work. Contractor is not obligated to provide any minimum volume or units of Work.

Without triggering a Change, as shown in paragraph 14 of the Subcontract, Contractor can add to this list by having any employee of Contractor provide written Notice to Subcontractor that specifies any additional drill or drills from the list in Exhibit E and subsequently

6

receiving Notice back from Subcontractor accepting the additional drill(s).

Item No.
42 – Waverly Road & Ten Mile Bayou

Exhibit E to the Subcontract contains a list of potential drills included in the Diamond Spread 3 Project, with pricing details, that may be assigned to Spartan. Listed among these additional drills is the Piney Creek Drill. Exhibit E explains, **"[ESS] may request Spartan to perform different and various drills, bores and/or crossings of an amount to be determined by ESS as the project proceeds[.]"**

Spartan relies on a provision in Exhibit A to the Subcontract, describing one way in which ESS *can* add a drill to the scope of work. Spartan complains that proper notice was not given; therefore, the work performed on the Piney Creek Drill is not covered by the Subcontract. Paul Sparkman, the president of ESS, testified that ESS assigned to Spartan the Piney Creek Drill pursuant to the Subcontract and that Spartan performed work on the Piney Creek Drill. This evidence was not contested.

Further, the Subcontract defines "Notice" under Section 29 "Miscellaneous Provisions" (Emphasis Added). It states:

29.10 **Notices**. Any notices required or permitted under this Subcontract must be made in writing to the parties at the addresses listed on the first page of this Subcontract. Notice must be deemed received when delivered, if personally delivered (including overnight courier), or properly transmitted if by facsimile transmission or email, or when delivered or refused after properly sent by registered or certified mail, return receipt requested and postage prepaid. *Any notice delivered by any party in any manner other than those described above must be deemed properly given if and when received.*

29.11 **Conclusiveness of Certain Communications.** Subcontractor's failure to provide written notice of any objections or disputes

7

> with ESS's notice of termination, proposed change order, proposed payment, or other communication from ESS within 2 days of receipt conclusively establishes Subcontractor's stipulation to all matters stated in the communications.

Paul Sparkman testified that ESS assigned the Piney Creek Drill to Spartan. Spartan did, in fact, perform work on the Piney Creek Drill as this work forms the basis of this litigation. Therefore, it follows that Spartan was clearly notified of the addition of the Piney Creek Drill assignment. As noted in the Subcontract, "[a]ny notice delivered by any party in any manner other than those described above must be deemed properly given if and when received." Further, there is no evidence in the record that Spartan objected to the way in which they were notified of the additional assignment within two days as required per the Subcontract. Consequently, Spartan's lack of notice argument fails.

Paragraph 14 of the Subcontract entitled "Changes" specifically states, "**ESS may make changes in the Subcontract Work without invalidating this Subcontract.**" (Emphasis added). A list of potential drills included in the Diamond Spread 3 Project was attached to the Subcontract at the time of its execution. The purpose of the Subcontract between ESS and Spartan was for Spartan "to perform work on a construction project described as" the Diamond Spread 3 Project. The Piney Creek Drill was listed as an additional potential drill upon which "[ESS] may request Spartan to perform" work. Spartan undeniably received notice of the additional work on the Piney Creek Drill as it did perform work on said drill. The lack of payment for Spartan's completion of work on the Piney Creek Drill is the basis for this litigation.

Spartan executed a Subcontract with ESS to perform work. Within that Subcontract, Spartan agreed to an arbitration clause and a forum selection clause.

The trial court found that the Subcontract governs the claims made by Spartan in its petition. For the reasons above, we find no palpable error that would result in manifest injustice has occurred in either the trial court's granting of ESS's exceptions of prematurity and improper venue or this court's denial of Spartan's writ application.

Finally, in both the Reason for Ruling and Judgment, the trial court incorrectly states that the lawsuit should be filed in Arkansas rather than Dallas County, Texas. Paragraph 21.6 of the Subcontract states: "[T]he exclusive venue for any lawsuits arising out of or related to the Subcontract is in Dallas County District Court of the State of Texas." Paragraph 29.5 of the Subcontract explains:

> **Governing Law.** The parties' rights and duties arising out [of] or related to this Subcontract [] are governed by the laws of the state in which the Project is located.

The Diamond Spread 3 Project was located in Arkansas. Thus, venue is proper in Dallas County, Texas, but Arkansas law applies to the litigation.

The judgment does not transfer the case to Arkansas. Therefore, Spartan is not compelled to file suit in Arkansas. The judgment merely grants the exceptions and dismisses the case without prejudice, leaving Spartan free to re-file its lawsuit in whatever venue is proper.

## DECREE

The judgment of the trial court is affirmed. Costs of this appeal are assessed against Spartan Directional, L.L.C.

**AFFIRMED.**

9